George D. Ogden, J.
On January 20,1955, on Brooks Avenue, in the town of Gates, two State troopers saw defendant’s automobile being operated in an unusual manner and, after a pursuit, stopped defendant within the city of Rochester and arrested him on a charge of operating an automobele while in an intoxicated condition. Defendant consented to a test of his sobriety by the use of a “ Harger Drunkometer the results of the test furnished prima facie evidence that defendant was in an intoxicated condition within the standards set forth in subdivision 5 of section 70 of the Vehicle and Traffic Law. The result of this test was received in evidence at the trial; two troopers testified that in their opinion defendant was intoxicated, and that his intoxication was of such a degree as to impair his ability to drive a car. The trial was held before a Justice of the Peace, without a jury, and at the close of all of the testimony defendant was found guilty, as the court stated, “ based on all the testimony taken.”
On this appeal defendant urges two grounds for a reversal of the judgment of conviction: first, that the “ Drunkometer ” test was not submitted to voluntarily, because defendant was advised by one of the troopers that if he did not submit to a *701 test his operator’s license would be revoked; second, that no proper foundation was laid for the receipt of the evidence of the result of the “ Drunkometer ” test, nor was the trooper who conducted the test and testified to the result, shown to have been properly qualified as a witness.
Defendant’s contention that the result of the “ Drunkometer ” test was improperly received because he did not voluntarily consent to take the test, is without merit. Section 71-a of the Vehicle and Traffic Law does, in fact, require one arrested on this particular charge to submit to one of the tests provided for in subdivision 5 of section 70 under penalty of revocation of his license to drive if he refuses to submit to such chemical test. To be sure, section 71-a was amended in 1954 (L. 1954, ch. 320) to provide that before such revocation shall be effective the person arrested shall be given an opportunity to be heard, but in the meantime his license to drive shall “ be temporarily suspended without notice pending the determination upon any such hearing.” The trooper’s advice was proper; it was a gratuitous offering of information as to the provisions of the statute, which the defendant was not required to accept; the test was submitted to voluntarily. (See People v. Ward, 307 N. Y. 73; People v. Kovacik, 205 Misc. 275, 292.)
Coming to defendant’s second point, defendant objected — and was overruled — to the receipt of any evidence as to the conduct or result of the test to which he submitted. In my opinion this constituted prejudicial error. The officer who conducted the test and testified as to the result, stated, in substance, that he had attended a school where the use of the ‘ ‘ Harger Drunkometer ’ ’ was shown, and that he had used the device on different occasions; he described the physical method of conducting the test of defendant’s breath, and told about various changes in coloring, etc., that he saw. Possibly the lack of foundation for this witness’ testimony is best illustrated by the following quotation from page 52 of the testimony:
“ Q. Do you know the chemical reaction involved in the operation of this equipment?
“A. No I don’t. I don’t have enough chemical training to explain that to the court.
“ Q. You don’t know the basis of whatever analysis may be involved here to justify the conclusion that there is a certain amount of alcohol in the blood, do you, that would take a qualified chemist to do that, isn’t that so?
“A. All I have to do is to match the colors and then take a reading as I have explained.”
*702 The use of the “ Harger Drunkometer ” has been exhaustively discussed in two recent cases: People v. Kovacik (supra), and People v. Coppock (206 Misc. 89). At the trials had in those two cases qualified experts were called to explain the operation of the device and the manner of arriving at the result, which result furnished evidence from which a court might find the defendant intoxicated. As a result of the testimony received in those cases evidence of defendant’s intoxication was accepted as “ overwhelmingly convincing;” It has been said “ that we should favor the adoption of scientific methods for crime detection, where the demonstrated accuracy and reliability has become established and recognized. Justice is truth in action, and any instrumentality, which aids justice in ascertainment of truth, should be embraced without delay.” (People v. Kovacik, supra, p. 291.) The difficulty with the case at bar is that the officer who testified as to the “Drunkometer” test was not shown to be possessed of the qualifications necessary to conduct the test; and no other witness was called to explain in any way how this machine, or instrument, works; or even that it was in proper working order. In my opinion, the trier of the facts in a case such as this, is entitled to have a reasonable explanation of the workings of some new or strange device, before he is asked to accept testimony of a reading of its end result as competent proof of a criminal act.
Though the trial in the instant case was held before the Justice, without a jury, and I feel certain that this defendant was not prejudiced in the following respect, I point out that the very name of the device — “ Drunkometer ” — might very well be misinterpreted to mean that only those who were ‘ ‘ drunk ’ ’ or intoxicated, were to be tested by it; that the very name somehow lent weight to the result which it produced. It may be that the use of the ‘1 Drunkometer ’ ’ will become so widespread that practical knowledge of its operation will become the portion of every person, but until it can be said that legally the accuracy and reliability of this device has become established and recognized, a reasonable and proper foundation for the use of its proof must be furnished.
Evidence obtained through urinalysis is based upon the testimony of experts; evidence of the amount of alcohol in the blood, based upon the taking of a sample of the blood, is furnished either by a physician or a qualified laboratory technician or chemist. Even in the field of traffic infractions designated as speeding offenses the courts still require some proof of the accuracy and reliability of the device used for measuring speed, particularly when this is the only evidence offered of a defend *703 ant’s guilt. (See People v. Rothstein, 1 Misc 2d 516; People v. Boehme, 1 Misc 2d 629.) Can the criterion of proper proof be greater in speeding cases than in misdemeanors or even felonies — operating a motor vehicle while in an intoxicated condition? I think not.
Since the finding of guilty was predicated upon all of the evidence received at the trial of this action it cannot be said that the receipt of the improper evidence did not affect the outcome. The judgment of conviction is reversed, the fine remitted, and a new trial ordered.
Submit order.