Howard A. Zeller, J.
Plaintiff seeks a judgment annulling the marriage of the parties because of her nonage. Defendant has counterclaimed for an annulment on the ground of plaintiff’s fraud in concealing, at the time of the marriage, that she was pregnant by a man other than defendant, and seeks a determination of illegitimacy as to a child born during the marriage. Plaintiff and defendant were married in New York State on August 25, 1956. Both parties were then 17 years of age. A child was born to plaintiff on April 27,1957.
Defendant entered military service in January, 1956 and did not return to his home until August 13, 1956. During that period of time plaintiff did not see defendant, but did have dates with two other young men.
Prior to August 13, 1956, and to the marriage, the plaintiff told a friend that she had “ missed ” her July, 1956 menstrual period, that she was pregnant, and that defendant was not the father of her unborn child. Plaintiff admittedly concealed this information from the defendant and it was not divulged to him until many months after the marriage. The day after the ceremony, the defendant returned to military service in Germany and since then has not cohabited with plaintiff.
Three months after the birth of the child, defendant, who was still in Germany, received a typical “Dear John” letter. Plaintiff wrote: “ I don’t love you at all, and (the child) is not yours. * * * I wanted someone’s name for my child. I’m sorry for (the child’s) sake, it was your name I had to choose.”
Two sets of blood grouping tests ordered by the court and performed at two different laboratories, definitely exclude the defendant as father of the plaintiff’s child. These tests are legislatively authorized (Civ. Prac. Act, § 306-a; Kwartler v. Kwartler, 291 N. Y. 689), and when properly conducted, are judicially recognized as conclusive on the question of paternity where definite exclusion is established (Anonymous v. Anonymous, 1 A D 2d 312; Cuneo v. Cuneo, 198 Misc. 240; Matter of Swahn, 158 Misc. 17).
It is obvious not only that there is no likelihood of this marriage being successful, but also that it originated in fraud. The marriage should be annulled upon the ground of plaintiff’s nonage (Domestic Relations Law, § 7, subd. 1), and upon the further ground of plaintiff’s fraud (Domestic Relations Law, *3 § 7, subd. 4). Plaintiff should be permitted to resume her maiden name. The child born during the marriage should be declared illegitimate. Defendant should be directed to pay a fee to the special guardian to be fixed in the judgment. No costs should be awarded.
During the course of the trial, plaintiff was asked certain questions seeking to elicit testimony showing the illegitimacy of her child. To these questions, special guardian objected upon the ground that public policy prevents a mother from giving testimony tending to bastardize her child. Similar objections were raised to questions asked other witnesses concerning admissions and statements made by plaintiff concerning her child’s illegitimacy. Decision was reserved and the testimony received subject to a motion, later interposed, to strike it from the record.
The public policy relied upon by special guardian has deep historic roots and is based on considerations of decency and morality (Commissioner of Public Welfare of City of N. 7. v. Koehler, 284 N. Y. 260; Matter of Findlay, 253 N. Y. 1; Urquhart v. Urquhart, 196 Misc. 664, affd. without opinion 277 App. Div. 752; Matter of Anonymous, 192 Misc. 359; “ Saks ” v. “ Saks ”, 189 Misc. 667; Matter of Smith, 136 Misc. 863; Matter of Barthel, 111 Misc. 727; 10 C. J. S., Bastards, §§ 3, 5; 97 C. J. S., Witnesses, § 90). As a result of this policy, it is the law in New York that neither spouse may testify that there was no access to the other (Chamberlain v. People, 23 N. Y. 85, 88; Civ. Prac. Act, § 349);* nor may a mother testify that her offspring is not legitimate (Commissioner of Public Welfare of City of N. Y. v. Koehler, supra; 10 C. J. S., Bastards, §§ 3, 5; 97 C. J. S., Witnesses, § 90; Richardson on Evidence [8th ed.], § 458). Generally, the incompetence of such admissions made out of court is on the same plane as testimony in court (Matter of Findlay, 253 N. Y. 1, supra). “ Even so, a distinction is drawn between declarations separate from conduct, avowals of bastardy in the nature of mere confessions, and declarations in the form of verbal acts, which characterize and color the family relation.” (Matter of Findlay, supra, p. 12.) There may be acts, conduct and words as a part, of a series of res gesta. which are competent evidence although a naked admission Avould be barred. What was said by plaintiff in July, 1956 and prior to defendant’s return concerning the absence of a menstrual period, plaintiff’s statement to her friend just prior to the *4 marriage that she was pregnant by a man other than defendant, and her letter to defendant are more than bald confessions; they constitute verbal acts explaining her motives, characterizing her relations to defendant, and supplying clarity to the course of events being scrutinized. These are admissible, but her direct testimony tending to show her child is not legitimate is inadmissable and is stricken from the record. It seems unfortunate that the direct testimony of the one with the most knowledge that her child is illegitimate may not be received. However, until our public policy is changed by the Legislature or by a higher court it must be followed.
The foregoing shall constitute the decision required by section 440 of the Civil Practice Act, and no findings of fact need be submitted. Defendant’s counsel may submit judgment accordingly.

 Section 126 of the Domestic Relations Law, nevertheless permits such testimony in a filiation proceeding brought to enforce support of an infant.