Elizabeth Bass Golding, J.
Proceedings were instituted by the petitioner wife against the respondent husband for support of three minor children, to wit, John Joseph Crouse, born March 17, 1961, Mary Ruth Crouse, born April 5, 1962, and Vincent James Crouse, born March 30, 1964. The petitioner and respondent were married on June 25, 1960.
The respondent denied being responsible for the support of the said Vincent James Crouse, claiming that he was not the father of said minor child, and requested a blood grouping test *650 pursuant to section 418 of the Family Court Act. The said test was ordered by the court and the parties were directed to appear at the office of Dr. Alexander S. Wiener for the purpose of completing the said blood grouping test. Blood tests were made of the petitioner and respondent at Dr. Wiener’s office on May 26, 1966, and of the child Paul on May 27, 1966. The results of the blood grouping test indicated that the respondent was excluded as the father of the child.
The matter thereafter came on before the court for hearing on July 12, 1966. The attorney for the petitioner objected to the introduction into evidence of Dr. Whener’s report unless he were given the opportunity to cross-examine Dr. Wiener as to the accuracy of the report. The hearing was then adjourned to July 20 for the purpose of Dr. Wiener’s testimony.
The petitioner’s attorney conceded the qualifications of Dr. Wiener as one of the foremost serologists and hematologists in the country and an expert in blood grouping tests. Dr. Wiener is recommended by the Family Court to conduct such tests because he is acknowledged as the discoverer of the Rh-Hr blood types and the mechanism of their inheritance, and a pioneer in the medicolegal application of blood tests in cases of disputed parentage.
An exclusion is convincing proof in questions of paternity that the respondent is not the father of the child born out of wedlock. But when a child is born in wedlock, the presumption of legitimacy of such child — which is one of the strongest presumptions in law — calls for more than a fair preponderance of the evidence in order to overcome said presumption. The court must be entirely satisfied that the alleged father is not a parent of the child.
Dr. Wiener testified that the blood samples from Mr. and Mrs. Crouse and Vincent James Crouse were taken in his presence by one of his assistants and the tests were performed under his supervision. The blood samples of each person were divided into four prelabeled tubes. Four tests were taken as a matter of routine. The test was done and duplicated on one day, then repeated on the following day, again in duplicate, making a total of four tests for each individual. But when an exclusion is found, as in this case, then two additional tests are made to confirm the exclusion, so that actually in this case the individual tests were done six times. When the tests were completed, Dr. Wiener interpreted the results and prepared a report, which was offered into evidence, to show the following results:
*651 ‘ ‘ Results:
Blood of Group and M-N Rh-Hr
Subgroup Type Type
1. Richard Crouse ... ..........Ai MN RhiRh:
2. Karen Crouse .... ..........0 MN Rhirh
3. Vincent.......... ..........B N Rhirh
‘ ‘ Interpretation:
“ The results of the M-n and Rh-Hr tests in this ease are not informative, but the A-B-0 tests prove that Richard Crouse is not the father of Karen Crouse’s baby, Vincent.
‘ ‘ Karen Crouse belongs to group O and her baby, Vincent, belongs to group B, so that Vincent’s father must belong to group B or group AB, and cannot belong to group 0 or group A.
“ Therefore, Richard Crouse, who belongs to group A, cannot be Vincent’s father.”
Dr. Wiener testified that the accuracy of the tests depends on the reliability of the worker and the interpretation of the said tests. He stated that there are 11 different serums for the A-B-0 groups, and the type of blood is dependent upon the proper identification of the serum. The serum is identified by “ testing the serum against the blood whose types are known, and if the serum gives the proper reaction it reacts to the right blood and it does not react with other blood in conformity with the type of serum you use, and if the reactions are clear cut, that is a satisfactory serum. In other words, it must clump certain blood and it must fail to clump other bloods.”
In order to confirm the exclusion indicated in the afore-mentioned report, Dr. Wiener then proceeded to perform the blood grouping tests of the parties involved in the courtroom. He stated ‘1 this is the first time I am demonstrating this in a courtroom ”, and to his knowledge the first time it had been done in the world. Dr. Wiener stated: “It is very brief and simple because we have a previous knowledge of the result. So that it is a self-controlled procedure because we know the three different types. Since I know what I am looking for I don’t need blood from the vein. I can take a small sample from the finger and get directly to the point. Of course, this is not the way if I don’t know. So I’m stating, it’s not the way it’s normally done. It’s only possible because I Imow in advance what to look for. So it can be very simple for that reason.”
Dr. Wiener recited the steps taken as he proceeded with the testing:
*652 ‘1I am now labeling the tubes in preparation. I have written Richard Crouse here. I have written Karen Crouse here, and here I am writing Vincent. Now I open one tube at a time so there is no chance of putting blood in the wrong tube. I am opening Richard’s tube. So if Richard will step over I will take some blood. This is not the normal way to take a blood test. I will take it normally from the vein, but for the demonstration I am taking it from the finger. Prepare the finger with some alcohol. These are disposable needles. You use them only once.
‘ ‘ The skin is prepared with alcohol then punctured. Then the alcohol is wiped away and the blood is collected in a tube containing an anti-coagulant that prevents the blood from clotting.
(Blood samples were taken from Richard Crouse, Karen Crouse and Vincent James Crouse.)
“ These are glass slides. There are three tests which I am going to do here. I am putting A serum and B serum * * *.
“Put a little blood on each side, here. That’s number one. (Richard Crouse)
(Number two is Karen Crouse and number three Baby Vincent.)
‘ ‘ On the left side I put what is called anti-A serum against A.
“ This test serum was tested yesterday to make sure it was active.
“ I am now mixing the blood and the serum. Now, the reaction should be visible almost at once, and it is. Will you look at the first pair, Your Honor. You will see the blood has come together as clots on the right side, not on the left. It reacts with the A serum.. That makes it A. In the second pair there was no reaction. That is group 0. The third pair, the reaction is on the B side which makes it B. If you wait a few minutes it becomes sharp. .
Q. “To clarify the results, as are visible to the Court and the Counsel and all parties, Richard Crouse’s blood is determined to be Type A? A. That’s correct. That is seen very clearly. The reaction is only with the A serum.
Q. “ And Karen Crouse’s blood is determined to be? A. Group 0.
Q. “ And Vincent’s blood is determined to be? A. “ Group B. It only reacts to anti-b serum. Q. Now, then, it is a fact, in your expert opinion, if Vincent’s blood is B and Karen’s is 0 and Richard’s is A, that Richard is excluded as the father of Vincent? A. “ Yes, because if the child has B it must come either from the mother or father or both. That completes the *653 demonstration. This will make the seventh time the test has been done in this case.”
Dr. Wiener has indicated that the results of blood grouping tests, in the hands of properly qualified experts, are completely objective and unbiased, and virtually infallible. Moreover, since the blood group with which a person is born does not change during his lifetime, should the results of blood tests be challenged, the tests can always be repeated by drawing fresh blood specimens, because the evidence is always available in a person’s blood stream. (10 Am. Jur., Trials, p. 653, Disputed Paternity Cases — Allen Spivock, Alexander S. Wiener.)
Much of the pioneer work in the legal application of blood tests was done in New York State, where statutes went into effect on March 22,1935 empowering courts to order blood tests in cases where parentage was an issue. It must be emphasized that the evidence provided by blood test is exclusionary in nature. Section 418 of the Family Court Act provides “the results of such tests may be received in evidence but only in cases where definite exclusion is established.”
In Clark v. Rysedorph (281 App. Div. 121 [1952]) the court discussed the results of blood tests conducted by Dr. Wiener and a Dr. Clemmer of Albany, New York. The court stated (p. 123): ‘ ‘ The principle underlying blood tests is that certain characteristics or properties of the blood of a parent perpetuate themselves in that of his or her offspring in accordance with the Mendelian Law, and that the results of such tests are relevant in the determination of whether a given child is the offspring of a specified adult of whether a given adult is the mother or father of a particular child.” The court further stated (p. 124): “ The testimony of Drs. Wiener and Clemmer definitely establishes that respondent could not possibly be the father of the child in question. This evidence is uncontradicted and is conclusive as to nonpaternity. To reject such testimony is to ignore scientific facts. This we may not do.”
In Commissioner of Welfare of the City of New York v. Costonie (277 App. Div. 90, 91 [1950]) the court, commenting on the conclusiveness of blood test findings, stated: “While
we think that a blood test exclusion report is something more than an opinion, the weight that should be given to it depends upon the evidence adduced in its support. If, as appellant contends, it is a scientifically established and accepted fact that an exclusory finding is conclusive as to nonpaternity, it should be recognized and given effect. In such case the courts should accept the decisiveness of a nonpaternity finding properly *654 arrived at as it would accept the demonstrable fact that a mixture of blue and yellow colors will produce varying shades of green, but never a red color.”
In Anonymous v. Anonymous (1 A D 2d 312 [1956]) the court held that the probative value of results of skillfully conducted blood grouping tests has been widely accepted.
The question of the presumption of legitimacy hereinbefore mentioned has been completely overcome by the report of Dr. Wiener and his demonstration in the courtroom. It was held in Fitzsimmons v. De Cicco (44 Misc 2d 307 [1964]) that the phrase “ out of lawful matrimony” does not refer only to an unmarried mother. The court in that case found (p. 309) that ‘ Whether the presumption of legitimacy is rebutted is now solely a question of fact in each case; legitimacy is no longer conclusively presumed in all cases where the husband has not been separate from the mother for a whole year prior to the child’s birth.”
In the leading case of Matter of Findlay (253 N. Y. 1, 7, 8 [1930]) Chief Judge Cakdozo stated:
“Potent, indeed, the presumption is, one of the strongest and most persuasive known to the law * * and yet subject to the sway of reason. * * * the presumption of legitimacy, like other presumptions, such as those of regularity and innocence, has been subject to be rebutted, though there have been varying statements of the cogency of the evidence sufficient to repel it.
“ By and large, none the less, the courts are generally agreed that countervailing evidence may shatter the presumption.
“ The presumption does not consecrate as truth the extravagantly improbable, which may be one, for ends judicial, with the indubitably false ”.
The court is entirely satisfied that the presumption of legitimacy has been overcome and finds that respondent Richard Crouse is not the father of the child Vincent James Crouse.
At the conclusion of the hearing the respondent stated that should he be found not to be the father of the said Vincent James Crouse he consents to an order of support, in which the petitioner joined, in the sum of $30 a week for his two minor children, John Joseph Crouse and Mary Ruth Crouse, said payments to be made through the Accounts Division of the Nassau County Family Court effective July 25, 1966. The order of May 12, 1966 is hereby modified and amended accordingly.