Gertrude M. Bacon, J.
Petitioner and respondent were married in New York on August 22, 1959.
A child was bom of this marriage named Karen Charlene Brite on January 27, 1963.
On November 5, 1965 both parties entered into a separation agreement which was incorporated by reference into a subsequent divorce obtained by respondent in Chihuahua, Mexico.
Respondent appeared in person and obtained final decree on December 1, 1965.
Provisions were made for support of the daughter and for custody and guardianship with petitioner and possible visitation rights for respondent.
During marriage and in the separation agreement respondent acknowledged the child and in the divorce proceedings respondent acknowledged the child as the child of the marriage and provided for support of said child in the -separation agreement.
On June 10, 1969 petitioner sought to enforce support provisions of the separation agreement for the child in the Family Court.
On July 22, 1969 respondent disputed paternity and blood grouping tests were ordered.
It is noteworthy that the respondent had never questioned paternity before petitioner sought to enforce support provisions for the child.
Not at the birth of the child in January of 1963 — not at the time of the contract of separation in November of 1965 — not at the divorce proceeding in December of 1965 — but rather — at all these occasions, the opposite was true.
The respondent made specific reference to the child and provided for support and possible visitation.
The respondent was always the moving party and had every opportunity to deny paternity and did not avail himself of this until six years after the birth of the child and only when petitioner instituted support proceedings.
On motion of respondent in July of 1969 a blood grouping test was ordered by thi-s court.
The question which presents itself is:
Can a party after a marriage during which a child was born and accepted and treated as the child of the marriage, and after a subsequent divorce six years later, question paternity of this child?
*12 Two important questions follow:
1. Must results of blood grouping tests ordered in this court six years after marriage and subsequent divorce during which respondent never questioned paternity of child, be introduced into evidence 1
2. Does a party to a marriage have the legal right to question legitimacy of a child born during the marriage six years later in a proceeding to enforce a support order Í
Answers
1. The answer is in the negative.
Under CPLR section 3121 (subd. [a]) a blood grouping test may be ordered by the court upon a motion by the respondent. However, under CPLR 3115 (subd. [a]), a Judge can refuse to accept into evidence any deposition which for any reason would require the exclusion of such evidence if the witnesses were present and testifying.
It is up to the Trial Judge to regulate the entrance of evidence into the proceeding.
Therefore, this court is not bound by the prior order of the blood grouping test and certainly not bound by its findings.
Where the legitimacy of a child is in issue, common sense, public policy and the welfare of the child must be considered in determining whether the results should be introduced into evidence. (See Matter of Harding v. Harding, 22 N. Y. S. 2d 810 [1940], app. dsmd. 261 App. Div. 924 [1941], where the court ordered the blood grouping test and then refused to accept the exclusionary results.)
See Anonymous v. Anonymous, N. Y. L. J. (Aug. 20, 1969, p. 12, col. 4) where Justice Castaldi of the Supreme Court, denied a motion for a blood grouping test, holding that “ To grant the defendant’s application after such an unconscionable delay would truly offend the conscience of the court.” (See, also, Matter of Time v. Time, 59 Misc 2d 912.)
In Matter of Findlay (253 N. Y. 1, 7-8) the court said “ the presumption [of legitimacy] will not fail unless common sense and reason are outraged by a holding that it abides ”.
2. The answer is in the negative.
The respondent, through the marriage, birth of the child, and in the subsequent separation agreement, admitted paternity and accepted the child, and specifically made provisions for the support of the child and possible visitation, which the respondent relied on in obtaining his divorce decree in Mexico.
The respondent initiated the action and benefited from the Mexican judgment which incorporated into its judgment all the provisions of the separation agreement.
*13 The foreign court relied on this agreement in issuing its judgment of divorce.
This court cannot and will not under these circumstances amend the separation agreement. Section 466 (subd. [c]) of the Family Court Act has limited powers to review these foreign orders and rightfully so.
This respondent has not challenged the validity of the divorce which respondent himself initiated, and, therefore, is clearly estopped from contesting parts of the decree.
The reverse would result in a holocaust, with parties to the contracts usurping them at their will, thus eventually questioning the validity of all contracts of this nature. See Bernsten v. Bernsten (87 N. Y. S. 2d 855, 856 [1949]) wherein the court held that ‘ ‘ A presumption of legitimacy exists, which has been made conclusive by the failure of the [prior] judgment to declare non-legitimacy. ’ ’
See Zonsky v. Zonsky (6 Misc 2d 661) where defendant was estopped from questioning the legitimacy of a child, after defendant had not availed himself of the opportunity to question legitimacy at a prior divorce action. He was estopped from relitigating the issue.
(See Hill v. Hill, 20 A D 2d 923; Matter of Alexander, 144 N. Y. S. 2d 530; Matter of Smith, 136 Misc. 863.)
1. In all of the above citations it is clear that the courts will not allow a child to be bastardized where common sense is outraged.
2. To rule to the contrary would make the legitimacy of every child born during a marriage suspect and permitted to be questioned legally at the whim or caprice of either parent.
3. Equity estoppel, public policy and protection of the child, will not allow this respondent to question the legitimacy of this child now.
Therefore, the blood grouping test ordered and results are excluded from this determination.