M. Michael Potoker, J.
At the conclusion of the hearing in this paternity proceeding, the attorney for respondent moved the court to direct that the parties undergo a polygraph test to assist the court in determining their credibility. Counsel acknowledges that there is no legal authority for his request but insists that in matters of this kind where the parties offer no evidence or proof except their own testimony, the court is *583 asked to make a determination solely upon the self-serving declarations of the respective parties.
In recent articles published in the New York Law Journal under “ Notes and Views ” (p. 1) on December 11 and 12, 1969, Sidney B. Schatkin, a former Assistant Corporation Counsel of the City of New York and author of the legal text, “ Disputed Paternity Proceedings ” (Matthew Bender Co., publishers), discusses the issue of paternity proceedings and the lie detector. The author prefaces his treatise with the debate that ensued in the English House of Lords on a proposed bill to authorize blood tests in paternity cases and where Lord Merthyr observed as follows: “ In my experience of these cases, 8 * * there is no class of case in which there is a greater degree of perjury in the courts. In the cases which are fought at all there is always a flat denial by one side or the other of the facts at issue.”
Mr. Schatkin discloses that Bichard 0. Arther, Director of the National Training Center of Lie Detection, reported the results of the use of the polygraph in a series of 312 consecutive paternity cases in Chicago, Illinois. (Arther: The Polygraph Studies, Vol. II, No. 1, July-August, 1967) as follows: u In that series of 312 paternity cases, 93 percent of the 589 parties and witnesses orally admitted to the polygraphists that they had committed perjury when testifying in court.’’
The use of the lie detector in paternity cases has been in use in Orange County, California since 1959 and the results have been admitted into evidence upon stipulation with defense attorneys. It is conceded that no such use of the polygraph is made in this State. The court is fully cognizant of the burden placed upon it in determining the truthfulness of the parties and their witnesses. It is precisely for that reason that the appellate courts insist that a filiation order must be supported by a decision containing adequate findings of fact and that a higher standard of proof is required in .such cases (Matter of Gray v. Rose, 30 A D 2d 138).
In Matter of Harris v. Doley (22 A D 2d 769) the court held that a decree by the Family Court following a trial in a paternity proceeding must conform to the requirements of C'PLB 4213 (subd. [b]) and must state the facts deemed essential to support the determination. (See, also, Sager v. Sager, 21 A D 2d 183; Matter of Fitzsimmons v. DeCicco, 44 Misc 2d 307.)
It is also precisely for the same reason that the standard of proof required to establish paternity in filiation proceedings is that such proof be entirely satisfactory. (Matter of Commis *584 sioner of Welfare of City of N. Y. v. Wendtland, 25 A D 2d 640; Matter of Gray v. Rose, supra, and numerous other eases.)
In Matter of Martin v. Lane (57 Misc 2d 4) the court held that in a paternity proceeding, evidence required to sustain order of filiation should be entirely satisfactory, and burden of proof of mother must go beyond mere preponderance of evidence, and such evidence must be so clear and convieing as to reach the point of entire satisfaction.
An accusation of paternity requires proof of entirely satisfactory evidence sufficient to create a genuine belief in mind of trier of facts that respondent, and no one else, is father of the child in question (Matter of Tilson v. Bark, 52 Misc 2d 338).
Our courts judicially recognize the accuracy and reliability of an ordinary speedometer, a radar speedometer and an electrical ‘ ‘ speed-watch ’ ’ device in traffic cases. Tests based upon the Harger Drunkometer, which by measuring the alcohol in the breath enables the weight of alcohol in the blood to be calculated, are also admissible in evidence (People v. Davidson, 5 Misc 2d 699).
Blood grouping tests are relevant on the issue of paternity and in many instances the result may very well be the only defense available to a respondent. The blood grouping test is authorized by sections 532 and 418 of the Family Court Act; section 684-a of the Code of Criminal Procedure and CPLR 3121. In paternity proceedings the result of the blood grouping test is however admissible in evidence only where definite exclusion is established. (Clark v. Rysedorph, 281 App. Div. 121; Anonymous v. Anonymous, 1 A D 2d 312; A. C. v. B. C., 12 Misc 2d 1; Matter of Crouse v. Crouse, 51 Misc 2d 649.)
Parenthetically we note that the use of blood tests in connection with paternity is of comparatively recent origin and it was not until 1952 that the Appellate Division in Clark v. Rysedorph (supra) held uncontradicted evidence of the results of blood grouping tests conclusive as to nonpaternity.
New York courts have not as yet recognized the polygraph or “lie detector ” as a valid and feasible scientific device and evidence of tests based upon these instruments is, therefore, not admissible.
The Court of Appeals passed upon the lie detector test in People v. Forte (279 N. Y. 204, 206). There the defendant, who was prosecuted for murder, requested the court’s permission to be tested by the lie detector; the trial court denied the request. The Court of Appeals affirmed, saying: “ The record is devoid of evidence tending to show a general scientific recognition that the pathometer possesses efficacy. Evidence relating to hand *585 writing, finger printing and ballistics is recognized by experts as possessing such value that reasonable certainty can follow from tests. Until such a fact, if it be a fact, is demonstrated by qualified experts in respect to the ‘ lie detector,’ we cannot hold as matter of law that error was committed in refusing to allow defendant to experiment with it.” (See, also, People v. Dobler, 29 Misc 2d 481.)
Applying the standard of proof required in this proceeding, I find that petitioner has proved her allegations by clear, convincing and entirely satisfactory evidence that respondent is the father of the male child born to her on June 25,1969. The court credits her testimony that the parties engaged in acts of sexual relations from March to October, 1968; that as a result thereof she became impregnated with child; that she did not have relations with any other man during the crucial period and that the child was a full-term baby born on June 25, 1969.
Respondent testified that they had relations from some time in 1967 to April, 1968 and that he did not see her after May, 1968 when he told her that he was severing their friendship. Yet on cross-examination, respondent admitted that she slept over at his home in June, 1968.
The court had ample opportunity to observe the witnesses and their demeanor and to evaluate their interest and credibility. The petitioner was direct, forthright, clear and convincing in all aspects of her testimony vis-a-vis the vague, indifferent and contradictory statements made by respondent.
Order of filiation is accordingly entered. An investigation as to respondent’s means is ordered and a full hearing for entry of a support order is adjourned to May 26, 1970.