Sherwood L. Bestry, J.
Defendant was arrested on March 4, 1970, charged with driving while intoxicated at 1:45 a.m. the same date, on Millersport Highway in the Town of Amherst, New York, in violation of subdivision 2 of section 1192 of the Vehicle and Traffic Law, and tried before this court without a jury on April 13, 1970.
The defendant was apprehended after a high-speed chase consuming two minutes in time. When stopped, he was arrested for speeding as well as driving while intoxicated. The speeding *922 charge was dismissed at the close of the People’s case because of a variance between pleading and proof.
With respect to the charge of driving while intoxicated, the arresting officers, State policemen, testified as to their observations of the defendant and their conversations with him.
They described him as follows: strong odor of alcohol on breath, hair disheveled, speech a little bit slurred, eyes 'bloodshot, slow moving, swayed when he walked.
The defendant advised them that he had had two beers, was not ill, had not been to a doctor nor suffered from sugar diabetes.
Both police officers recited their experiences with drivers charged with driving while intoxicated and with drivers whose ability to operate a motor vehicle is impaired by the consumption of alcohol.
After arresting the defendant, the police officers advised the defendant of his rights relative to the taking of a chemical test to measure alcohol content by weight in his blood. Defendant consented to the taking of a breath test by means of a device known as the Breathalyzer.
Police officer Thomas J. Kenny hereinafter referred to as Kenny, called the State Police barracks at Clarence, New York requesting that the Breathalyzer machine be ‘ ‘ turned on ’ ’. When the two police officers and the defendant arrived at the State Police barracks, Kenny was the technician who administered the test to the defendant. His training consisted of going to the Breathalyzer School of the State Police. He had used the machine 30 times prior to his administering the test to the defendant.
Kenny’s testimony relative to the test was received without any objection.
‘ ‘ To prepare the test,, I gauged the test ampule used in the test. I placed the ampules in their respective positions in the Breathalyzer. I connected a ‘ bubbler ’ into one ampule and then purged the machine- — -that is, I cleared it of any possible alcohol from previous tests. It (the machine) had not been used that evening. I was the only operator on duty that evening. I don’t know when the machine had been used before.”
Kenny ‘ ‘ calibrated ’ ’ the m’achine by placing the pointer at zero on the scale. He inserted a sanitary mouthpiece into- the input hose. The machine was then ready for the test. “ It took five minutes to ready the machine. ’ ’ A check list of procedures was followed.
The check list was received in evidence as plaintiff’s Exhibit 1 and a photo static copy of same is attached to this decision.
*923 “ The results were 0.12%. It indicates lack of intoxication. 0.12% indicates impairment.”
The officer testified in addition: ‘ ‘ The machine has a thermometer and it must be warmed up to 50 degrees with a tolerance of 3 degrees. A sealed ampule was used for the test.”
Kenny further testified that no substance other than alcohol affects the machine.
State Police Sergeant Kevin J. Enser, the police officer, saw officer Kenny use the machine and follow the check list. He also observed the reading of the machine as being 0.12%.
The defendant testified that he had drunk two beers over a period of one hour at the Pine Lodge tavern and that he had been tired but not intoxicated. The defendant testified that he had been in a motorcycle accident two years prior thereto in which accident he suffered a “ smashed leg ” which left a limp. He admitted that he had swayed the night of the arrest as he always does since the motorcycle accident. He further testified that one of his eyes is always red and gets more so when tired. Eurthermore, he drove his automobile home from the State Police barracks subsequent to the test, after the passenger, who had been in his automobile at the time of the arrest, drove it to the State Police barracks in Clarence.
The defendant called as a witness his passenger, a 17-year-old boy, who corroborated defendant’s testimony with respect to the drinking of two beers, the permanent red eye, and the limp.
The State Police officers believed that the defendant had been driving while intoxicated, which belief or opinion was based upon their observations and the results of the Breathalyzer. Nevertheless, they both admitted that the twelve hundredths of one percentum reading of the Breathalyzer indicated that the defendant was ‘ ‘ impaired ’ ’.
The defendant was over the age of 21 years; to wit, 28 years old.
Subdivision 1 of section 1192 reads as follows: “No conviction shall be had under this subdivision after entry of a plea of not guilty unless it is shown by means of a chemical test administered under section eleven hundred ninety-four that there was within two hours of the defendant’s arrest, ten-hundredths of one per centum or more by weight of alcohol in his blood ”. Sentence one of the same paragraph provides that whoever operates a motor vehicle while his ability to operate such motor vehicle is impaired by the consumption of alcohol shall be guilty of a traffic infraction.
Subdivision 2 of the same section provides that whoever operates a motor vehicle while in an intoxicated condition shall *924 be guilty of a misdemeanor. Subdivision 3 of section 1192 provides that, in any action or proceeding involving a charge either under subdivision 1 or subdivision 2, the court may admit evidence of the amount of alcohol in the defendant’s blood taken within two hours of the time of arrest, as shown by medical or chemical analysis of breath, blood, urine or saliva, and that, “ For the purposes of this section (a) evidence that there was, at the time, five-hundredths of one per centum, or less, by weight of alcohol in his blood is prima facie evidence that the defendant was not in an intoxicated condition; (b) evidence that there was, at the time, more than five-hundredths of one per centum and less than fifteen-hundredths of one per centum by weight of alcohol in his blood is relevant evidence, but it is not to be given prima facie effect, in indicating whether or not the defendant was in an intoxicated condition; (c) evidence that there was, at the time, ten-hundredths of one per centum, or more, by weight of alcohol in his blood, may be admitted as prima facie evidence that the defendant’s ability to operate a motor vehicle or motorcycle was impaired by the consumption of alcohol; (d) evidence that there was, at the time fifteen-hundredths of one per centum or more, by weight of alcohol in his blood, may be admitted as prima facie evidence that the defendant was in an intoxicated condition. ”
Based on the results of the chemical test, the People failed to present prima facie evidence of the fact that the defendant was intoxicated.
The result of the Breathalyzer test, if accepted by the court would constitute evidence of a violation of subdivision 1 of section 1192 of the Vehicle and Traffic Law.
Furthermore, the results of the Breathalyzer test being .12 would, if accepted by the court, be relevant evidence in determining whether the defendant was intoxicated. In other words, the results of the Breathalyzer test and the observational evidence would make a total picture in helping to determine guilt or innocence of driving while intoxicated.
Taking into consideration the permanent physical defects of the defendant, the observational evidence of the police officers had not convinced this court beyond a reasonable doubt that the defendant is guilty of a violation of subdivision 2 of section 1192 of the Vehicle and Traffic Law. The results of the Breathalyzer test, if accepted m toto, would establish at most that the defendant was guilty of a violation of subdivision 1 of section 1192.
However, the question remains whether this court is to accept the results of the Breathalyzer despite the fact that the evidence thereof was admitted without objection.
*925 The court is well aware of the carnage committed upon our highways by the drunken driver, of the untold millions in property damage each year, the maiming and the killing as well as the untold heartache.
The court is further well aware of the desirability of a testing device other than the established and well-accepted blood sample test to measure alcoholic content in the blood of one accused of the violation of section 1192. Even in this enlightened day and
age, there is still revulsion and apprehension upon the part of a great many people in having blood samples taken.
With respect to the Breathalyzer, this is a case of first impression insofar as I can determine from the reported cases.
The court’s reading of literature concerning the Breathalyzer independent of the testimony given in this case has caused us to learn that the Breathalyzer is an electro-chemical device purporting to record the weight of alcohol in the defendant’s blood.
Therefore, this case concerns the weight of the evidence (not the admissibility in evidence — because it was received without objection) of the reading of the said Breathalyzer.
The ultimate fact to be proved is the percentage by weight of alcohol in the defendant’s blood.
If the defendant is to be found guilty, the burden rests upon the People to establish the accuracy of the device.
This court believes that we are at the same stages of the law with respect to the Breathalyzer as we were with respect to radar as a speed-measuring device at the time of the decision in People v. Offermann (204 Misc. 769).
As Justice Ward said in People v. Offermann (supra, pp. 774 — 775) science “ must not bring push button justice unless and except such justice is surrounded by the long established rules of evidence.”
Following People v. Offermann (supra) appeared a long line of cases involving radar: City of Rochester v. Torpey (204 Misc. 1023; People v. Katz (205 Misc. 522); People v. Sarver (205 Misc. 523); City of Buffalo v. Beck (205 Misc. 757); People v. Sacks (1 Misc 2d 148); People v. Nasella (3 Misc 2d 418); People v. Jamison (8 Misc 2d 408); People v. Magri (3 NY 2d 562).
Finally, in People v. Magri (supra, p. 565) the Court of Appeals said ‘ ‘ the application of radar to speed has passed beyond the trial stage ”.
With respect to cases involving breath-testing devices to measure alcoholic weight in one’s blood People v. Spears (201 *926 Mise. 666) was decided in 1952. In that case, the court denied a motion to suppress evidence of a Harger Drunkometer.
People v. Kovacik (205 Misc. 275), decided in 1954, also involved the Harger Drunkometer. In .that case a detective-chemist of the New York City Police Department laboratory conducted the Drunkometer test. He was in charge of control of the chemicals used in the testing for intoxication. He had a B.A. and an M.A. and has attended a course under the auspices of the Indiana State Police given by Professor B». N. Harger, who conceived and designed the Drunkometer. The detective had taken other courses on the subject. In addition, Dr. Harger himself testified. The scientific evidence was full and complete and the court had ample opportunity to determine the accuracy of the particular testing device.
The court (p. 290) found: “ the Harger drunkometer,. a scientifically reliable and accurate device for determining the alcoholic content of a defendant’s blood for compliance with section 71-a of the Vehicle and Traffic Law ”. (The forerunner of section 1192 of the Vehicle and Traffic Law.) “ It has been so accepted in the courts of the other States of the Hnited States.” The court then referred to People v. Spears (supra). However, the Spears case (supra) did not accept the reliability of the Drunkometer; it merely held that the results of the test would not be excluded in a motion to suppress.
The Kovacik case (205 Misc. 275, 290, 291, supra) cited Toms v. State (239 p. 2d 812 [Okla.]) and adopted the following language as its own: ‘ ‘ This court is of the opinion, that we should favor the adoption of scientific methods for crime detection, where the demonstrated accuracy and reliability has become established and recognized.” Following the Kovacik case (supra), People v. Coppock (206 Misc. 89) was decided That case also involved the Harger Drunkometer. Qualified experts were called to explain the operation of the device and the manner of arriving at the results which results furnished evidence from which a court might find the defendant intoxicated.
In 1956 People v. Davidson (5 Misc 2d 699) was decided. Again the Harger Drunkometer was involved. In referring to the language of Toms v. State (supra) adopted by People v. Kovacik (supra) the court said (p. 702); “ The difficulty with the case at bar is that the officer who testified as to the ‘ Drunkometer ’ test was not shown to be possessed of the qualifications necessary to conduct the test; and no other witness was called to explain in any way how this machine, or instrument, works; or even that it was in proper working order. In my opinion, *927 the trier of the facts in a case such as this, is entitled to have a reasonable explanation of the workings of some new or strange device, before he is asked to accept testimony of a reading of its end result as competent proof of a criminal act.”
As in People v. Davidson (supra) in the instant case, no witness was called to explain how the Breathalyzer works. No evidence whatsoever of any scientific principle was presented. The officer who conducted the test as hereinabove stated testified that he had given the test 30 times and had gone to a school conducted by the State Police. The number of times he conducted the test and his schooling was the sole evidence of his alleged qualifications to administer the test.
The following language of People v. Davidson (supra, p. 702), with the substitution of the word “ Breathalyzer ” for the word “ Drunkometer ”, is adopted as the language in this case:
‘ ‘ It may be that the use of the ‘ Drunkometer ’ will become so widespread that practical knowledge of its operation will become the portion of every person, but until it can be said that legally the accuracy and reliability of this device has become established and recognized, a reasonable and proper foundation for the use of its proof must be furnished.”
Therefore, this court does not accept the results of the Breathalyzer, leaving only the observational testimony of the police officers. This court feels that there is reasonable doubt that the defendant is guilty of a violation of subdivision 2 of section 1192. This court cannot find the defendant guilty of a violation of subdivision 1 of section 1192 based on our foregoing reasoning with respect to the Breathalyzer.
The action is dismissed, and defendant discharged.
NEW YORK STATE POLICE
BREATHALYZER OPERATIONAL CHECK LIST
Subject’s name Richard A. Seger Date 3/14/70 Time (of test) 2:05 am Blood Alcohol 0.12% Ampul Control No. 7116
Operator TPR. T. J. Kenny Witness Sgt. K. J. Enser Instrument Breathalyzer Model 900 NYSP No. 10785

PREPARATION

1. □ Throw switch to ‘ ‘ on ” unlock & center null meter, wait until thermometer indicates 50° ± 3° C.
2. Q Gauge reference ampul & insert in left-hand holder.
3. □ Gauge test ampul, open (gauge again), insert bubbler and connect to outlet.

*928
PURGE

4. □ Turn to take, flush out, turn to analyze.
5. Q When bed empty signal appears, turn to off, wait 1% minutes, turn on light, and balance null meter.
6. □ Set blood alcohol pointer on start line.

ANALYSIS

7. □ Turn to take, secure breath sample, turn to analyze (record time).
8. □ When bed empty signal appears, turn to off, wait 1% minutes, turn on light, and balance null meter.
9. □ Record blood alcohol scale reading.
10. □ purge, equilibrate, analyze, and record result. Dispose of test ampul. Lock null meter.