Ralph E. Goby, J.
The parties were married in Petersburg, Virginia, on March 23, 1940 and in 1955 the petitioner instituted the present support petition for herself and three children, Charlie, Carroll and Gerald. On March 13, 1961, children Margaret and Patricia were added to the petition after respondent admitted paternity in court and on March 4, 1963 respondent admitted paternity of child Cheryl who was then added to the petition.
The petitioner testified that she and the respondent separated m 1955 when they ceased living together. She stated that during the years 1954 and 1955 she had sexual relations with the respondent three times a week and that despite the separation, the respondent visited her often at her home and she had relations with him between 1955 and 1958, which continued up until two years ago (1971). The petitioner also claims that' she never had sexual relationships with any other man between 1940 and 1973.
The respondent, however, testified that he had no sexual relations with the petitioner after 1952 which he claims is the year they separated, not 1955, as claimed by the petitioner. The respondent claims he was not the father of children Margaret, Patricia and Cheryl, who were born in 1956, 1957 and 1958, respectively, and had told this to the petitioner. The petitioner insists he visited these children and gave them gifts and money between 1955 and 1960. Respondent denies this and states he visited the children only and did not give them gifts and money.
The child Margaret was born to the petitioner on July 5, ,1955, the child Patricia on August 25,1956 and the child Cheryl on May 12,1958. The parties have never been divorced.
Since 1958, court orders were amended and modified to include support payments for these three children. It is a matter of record that respondent has been paying money in court for these three children. The petitioner and children have been receiving assistance from the Department of Social Services since 1968. Court records also indicate that various support orders have been enforced by requiring the posting of cash bonds, which the respondent has paid.
*5 On November 20, 1972, the respondent requested a modification downward. A 50-1 was ordered to check on his reported income and the case was adjourned until January 10, 1973. The court modified the existing support order from $50 to $30 on consent of both parties, effective January 12, 1973, and all back arrears were canceled. The respondent appeared on January 10, 1973 with an attorney, and for the first time, denied he was the father of the three children. The court then ordered a blood grouping test on these last three children. The respondent stipulated that if paternity was not excluded by the testing, he would no longer contest the paternity.
The blood grouping test furnished to the court on March 31, 1973 stated that the respondent was doubly excluded from being the father of children Patricia and Cheryl, since Patricia and Cheryl both belong to G-roup O, type EH2 rh and the respondent could not be their father, since a mating of EH0 and EH0 cannot yield a child of type EH2, rh.
On April 23, 1973, when the parties and their attorneys next appeared in court, the petitioner still claimed that the respondent was the father of the three children in question, regardless of the result of the blood grouping test. The court then issued a subpoena for Dr. Brancato who had conducted the blood grouping test and had issued the above conclusions based on his findings after having examined the petitioner and respondent and three children in question. The case was adjourned for a hearing on May 30, 1973.
At this hearing and prior to its commencement, the Corporation Counsel, representing the petitioner (because she was still-on welfare — a public charge with three children) made two motions:
1. That the respondent is estopped by laches from contesting paternity, as more than 10 years have elapsed since the birth of the children, in accordance with section 517 of the Family Court Act (two-year Statute of Limitations).
2. That the court issue an order of filiation in view of the fact that respondent had acknowledged the paternity of the three children in court but that no order of filiation was ever entered on the record.
The court reserved decision upon these two motions pending completion of the hearing.
The main issues in this case are thus squarely presented:
1. Does the presumption of legitimacy prevail over the findings of a blood grouping test excluding paternity, conducted in 1973, in a support petition under article 4 of the Family Court *6 Act, despite the admission of paternity hy the respondent father 10 years ago?
2. Did the two-year Statute of Limitations apply in this support proceeding in accordance with section 517 of the Family Court Act and thus effectively bar the respondent from disputing paternity, as more than 10 years have elapsed since the respondent’s admission of paternity in open court?
The two-year Statute of Limitations contained in section 517 of the Family Court Act pertaining to paternity proceedings is inapplicable to a support proceeding under article 4 of the Family Court Act. The parties were still married to each other at the time the three children in question were born, and the presumption of legitimacy automatically arises. (Matter of Findlay, 253 N. Y. 1.) It thus becomes the burden of the respondent to come forward with clear and convincing evidence establishing that someone other than the respondent is the father. (Matter of Mannain v. Lay, 33 A D 2d 1024 and cases cited, affd. 27 N Y 2d 690; Matter of Gray v. Rose, 32 A D 2d 994.) The court’s granting of the respondent’s motion for a blood grouping test of children whose paternity respondent claims is in doubt is fully authorized under section 418 of the Family Court Act. (Matter of Swift v. Swift, 65 Misc 2d 1014.) The exclusion obtained by the blood grouping test in this case is convincing proof that the respondent is not the father of children Patricia and Cheryl. (Matter of Crouse v. Crouse, 51 Misc 2d 649.)
An important factor to be determined in this case is whether the respondent held himself out as the father of the children in question. A careful analysis of the facts here reveals that the petitioner did not request the court to add the three children in question to the petition until 1961 and 1963, some eight years after the child Margaret was born, six years after Patricia was born, five years after Cheryl was born, and eight years after the support petition was started. This gap of five to eight years is critical, even though the respondent admitted paternity in court of the children in question. The credibility of the petitioner can also seriously be questioned, because in her testimony she stated she had relations with the respondent three times a week between 1954 and 1955 and relations with him between 1955 and 1958. It must be carefully noted that the three children in question were born in 1955, 1956 and 1958 respectively. Petitioner further contends she had relations with her husband up to 1971 despite the fact they separated in 1955. This straining to fit the facts into a preconceived pattern of con *7 ception of birth of children between 1955 and 1958 is unworthy of belief, as is her statement that she had sexual relations with Her separated husband three times a week between 1954 and 1955. To pinpoint with complete and unerring accuracy the number and frequency of sexual relations almost 20 years ago would strain the credulity of even a benighted backwoodsman to the breaking point.
The respondent denied paternity in court some 12 years after his admission in court and after he had hired an attorney. His attorney contends that he did not fully comprehend the nature of his admissions.
An admission of paternity is also evidence of paternity bqt it is not conclusive as a matter of law. (Matter of Howard v. Robinson, 32 A D 2d 837.) Part of the rationale stems from the fact that a respondent may admit paternity, not because he actually recognizes the child as his own, but because of a desire to avoid litigation or potential embarrassment. (Matter of Anonymous, 60 Misc 2d 163.)
In order for an estoppel to be evoked against a respondent, there must be strong recognition of the child, such as providing for support over a number of years. (Brite v. Brite, 61 Misc 2d 10; 12 Zett-Edmonds-Buttrey-Kaufman, N. Y. Civ. Prac., § 20.04 [1972].)
The record is clear in the instant case, however, that there were no voluntary payments of support by the respondent but payments were made only under court order, and that several times respondent had to post a cash bond because of default in payments.
The issue of legitimacy of a child, born to a married woman, may be raised by the respondent husband in an action for support. (12 Zett-Edmonds-Buttrey-Kaufman, N. Y. Civ. Prac., § 22.02.) The husband may raise the issue of legitimacy at any time after the birth of a child, although a paternity action may not be commenced more than two years after the birth of a child unless there has been a written acknowledgment of support. (Family Ct. Act, § 517.) There certainly is no written acknowledgment of support by respondent in this case. The husband’s raising the issue in a support action does not transform the issue into one under article 5 of the Family Court Act. (Matter of Swift v. Swift, 65 Misc 2d 1014, supra.)
Furthermore, this is a support proceeding under article 4 of the Family Court Act, not a paternity petition under article 5. As such, in support proceedings, the Family Court has continuing jurisdiction and may order a blood grouping test at any *8 time before such proceedings are concluded with finality. (Family Ct. Act, §§ 418, 451; Matter of Oliver v. England, 48 Misc 2d 335; Matter of G. v. H., 34 A D 2d 860.) The Family Court has continuing jurisdiction- over any support order and may modify any order issued in the course of such proceeding. However, their power is only exercised when an intervening material change of circumstances has occurred since the prior order was made. (Matter of Sullivan v. Sullivan, 55 Misc 2d 691, affd. 29 A D 2d 739.)
Newly discovered evidence can also be considered as warranting a modification or vacating a previous order. (Merritt v. Merritt, 259 App. Div. 242, app. dsmd., 285 N. Y. 561, mot. for rearg. den. 285 N. Y. 743.)
The newly discovered evidence in this case is, of course, the exclusion of paternity of two of the children by a blood grouping test conducted in March, 1973, some 10 years after admission of paternity by the respondent in court. The two-year Statute of Limitations is inapplicable, as this is a support proceeding under article 4.
The intervening material change of circumstances in the instant case is the blood test exclusion. The uncontradicted evidence of results of the blood grouping test are conclusive as to nonpaternity. A blood test exclusion is the perfect answer to a fake charge of paternity. An exclusion does not merely impair the petitioner’s credibility, nor does it merely disprove the charge. A blood test exclusion conclusively demonstrates nom paternity. In this case, two separate tests were carried out, both of which excluded paternity of two of the three children. To reject such evidence would be to ignore the scientific facts. (Clark v. Rysedorph, 281 App. Div. 121.)
“ A New York 'Court held that a blood test exclusion overcame the presumption of legitimacy, even though the husband and wife shared the same bed during the critical period of possible conception of the child. (Zaskorski v. Luizzi, 1956, 3 A. D. [2d] 659) ”. (Schatkin, Disputed Paternity Proceedings [4th ed., 1967], p. 257.)
In paternity proceedings, the result of a blood grouping test is admissible only where definite exclusion is established. (Clark v. Rysedorph, 281 App. Div. 121, supra; Anonymous v. Anonymous, 1 A D 2d 312; A. C. v. B. C., 12 Misc 2d 1; Matter of Crouse v. Crouse, 51 Misc 2d 649, supra.)
Uncontradicted evidence of the results.of a blood grouping lest is conclusive as to nonpaternity. In the instant case, the doctor who conducted the test testified, His qualifications as an *9 expert were conceded and despite a long cross-examination by the Corporation Counsel, there was no effective rebuttal of his testimony or report.
The result of a blood grouping test which excluded the respondent husband as the father of two children here is relevant, admissible and conclusive, and the presumption of legitimacy arising from the marriage is conclusively rebutted. A holding otherwise would outrage common sense and reason. (Matter of Oliver v. England, 48 Misc 2d 335, supra.)
The presumption of legitimacy, at one time in the law, was held to be unrebuttable and conclusive. It is now an ordinary evidentiary presumption which can be overcome by competent proof such as exclusion of paternity by blood grouping 'test (emphasis mine), as in this case. (Matter of “ Anonymous ” v. “ Anonymous ”, 43 Misc 2d 1050; Matter of Findlay, 253 N. Y. 1, supra.)
The instant case is to be distinguished from Brite v. Brite (61 Misc 2d 10, supra). That case held, in child support proceedings, the court was not bound by prior order of the court requiring blood grouping test pursuant to father’s denial of paternity and was not bound by findings of the test considering that the child was born, accepted and treated as a child of the marriage for six years prior to the time the father obtained a divorce.
There „was no divorce in the instant case and there was no written acknowledgment of support. Support was made only by court orders and there was no credible evidence that the father had accepted and treated the children in question as his.
Based on all of the foregoing statutory and case law, applied to the special facts and circumstances of this case, the conclusion and decision of the court is as follows:
1. The presumption of legitimacy has been successfully overcome by the results of the blood grouping test. The respondent is not the father of child Patricia and child Cheryl.
2. The respondent is the father of child Margaret since the blood grouping test did not exclude him as the father. Furthermore, by his own stipulation in court he agreed to be bound if he was not excluded as the father.
3. The two-year Statute of1 Limitations is inapplicable since this ,is a support proceeding under article 4 and section 418 of the Family Court Act, not section 517 of the Family Court Act. Hence, there is no laches involved. No order of filiation can be entered since this is a support and not a paternity proceeding, despite the earlier admissions in court by the respondent that he was the father of the three children in question. The issue *10 of paternity can be raised at any time in a support proceeding under section 418 of the Family Court Act since the court has continuing jurisdiction over support proceedings under section 451 of the Family Court Act, in 1973 as well as in 1955 when this support action was first instituted.
The motions of the Corporation Counsel (1) that respondent is estopped by laches, and (2) that the court issue an order of filiation for the three children, are denied and dismissed.
The order of support is amended to $15 per week instead of the present order of $30 per week, for the support of wife plus the one child, Margaret, only.
All arrears as of the date of this decision are canceled.