Emmett J. Schnepp, J.
This proceeding was instituted pursuant to article 5 of the Family Court Act to establish the respondent’s paternity of a male child born to petitioner on September 17, 1963, and to compel respondent to support such child.
The testimony adduced in behalf of petitioner reflects that she is a married woman, still supported by and residing with her husband, and that she has been acquainted with respondent since about October, 1961, and engaged in regular sexual relations with him from about the end of October, 1961 until June, 1965. That in February, 1963, after advising respondent as to her pregnancy, he told her, in substance, to conceal the true'facts respecting the paternity of the child from her husband. She had relations with her husband until about December 26, 1962, just after the cessation of her last menstrual period prior to the birth of such child, but denied having sexual relations with him thereafter, even though she slept in the same bed with him until about May, 1963, and thereafter lived in a separate room in dtie common household. Further, that in early June, 1965, at respondent’s urging, she divulged to her husband her relationship with respondent, and the facts respecting the child in question, and asked him for a divorce to enable her to marry respondent. Her husband thereupon placed their three children with his mother, permitting petitioner and the child temporarily to remain in the home in quarters séparate from him.
According to petitioner, respondent on many occasions admitted that he was the father of the child. Testimony was also elicited from other" witnesses called by petitioner corroborating his acknowledgment of paternity of the child. The expenses in connection with the birth, confinement and support *337 of the child to date have been paid by her husband. There is no credible evidence connecting petitioner with any man during the time in question, except her husband and the respondent, and she states that respondent is the father of the child in question. The respondent admits an acquaintance with petitioner dating’ from 1961 and sexual relations with her after January, 1964, but denies paternity of the child or any admissions relating thereto.
A motion to dismiss the petition upon the ground that petitioner, a married woman, cannot institute paternity proceedings under section 512 of the Family Court Act, was denied. (Matter of Anonymous v. Anonymous, 43 Misc 2d 1050.)
To rebut the presumption of legitimacy, the court received evidence, over respondent’s objection, of the results of a blood-grouping test, conducted on ¡September 14, 1965. This test was voluntarily submitted to by petitioner’s husband, without a court order, and the results thereof excluded him as the father of the child. It is found that the blood-grouping test was properly and skillfully conducted and the tests and testimony of Dr. Richard C. Crane, a physician specializing in pathology, conclusively excludes the possibility of petitioner’s husband being the father of the child in question. Respondent objects to the admissibility in evidence of the results of such test, upon the ground that it was conducted without a court order. Blood-grouping tests may be ordered by the court to determine whether or not a respondent can be excluded as being the father of the child (Family Ct. Act, §§ 418, 532) and blood examinations of a party to an action, or an agent, employee or person under control of a party may be conducted upon notice only, or, if specific objection be raised thereto, upon order of the court. (CPLR 3121, 3122.) It is clear that such statutory provisions are designed to insure that the necessary parties submit to, ór be produced, for such blood examinations and to promote orderly practice and procedure. There is no statutory provision requiring a court order for a blood-grouping test under circumstances similar to those in the instant proceeding, or for an order directing a husband, not a party to the proceeding, to submit to a blood-grouping test.
Any evidence which logically tends to prove or disapprove one of the principal facts in issue, is relevant and admissible, unless to admit would violate some exclusionary rule. (Richardson, Evidence [9th ed.], § 5, p. 4.) The court’s attention has not been called to, nor has it found, any rule which would exclude the result of a blood-grouping test, otherwise relevant, simply because the test was not ordered by the court.
*338 The burden of proof to rebut the presumption of legitimacy rests with petitioner. That presumption will not fail unless common sense and reason are outraged by a holding that it abides. (Matter of Findlay, 253 N. Y. 1.) Here the petitioner and her husband lived together before, during the period of gestation, and thereafter. Under circumstances where husband and wife lived together in the conjugal relation, Judge Cabdozo said in the Findlay case (supra, p. 8), decided in 1930, that legitimacy will be presumed, even though the wife harbored an adulterer. However, in the face of present-day scientific advances the presumption of legitimacy must wither and shrink, and it is not conclusive but rebuttable. (Anonymous v. Anonymous, 1 A D 2d 312.) In this case the court said at page 316: “ Reason and logic, as well as a recognition of the modern advances in science, compel a determination that the presumption of legitimacy is not conclusive but rebuttable. The probative value of the results of skillfully conducted blood grouping tests has been widely accepted. The tests of course will be relevant only if they show noncompatibility as between the blood of defendant, the plaintiff, and the twins. If so, such evidence should be deemed conclusive as to paternity ”. There, on the issue of adultery, the husband sought a blood test to prove the paternity of twins born to the wife, which test was ordered by the court, to be used only to exclude paternity.
In Hill v. Hill (20 A D 2d 923), the court denied defendant wife’s application for a blood-grouping test. This was a divorce action where the issue related to the custody of a child. The denial was upon the ground that for six years the wife concealed the true paternity of the child from her husband, with whom she lived, who supported the child, and who still claims to be the father of the child. The court held that public policy and the overriding consideration for the welfare of the child barred a wife from bastardizing her child, where, under such circumstances, she now confesses her adultery for the sole purpose of seeking the child’s custody. Had the parties in either case, in the absence of an application for a court order, voluntarily submitted to the test, the court at the trial, in passing upon the admissibility of the evidence thereof, excluding paternity of the husband, would necessarily have recognized the same legal principles respecting the probative value of the results of the test as the court did in passing upon the motion seeking the test. In other words, the mere absence of an application for a court order directing such test, or tin* absence of statutory authority permitting or requiring the same, is not determinative of the question as to whether the result of such test, excluding pater *339 nity, under the circumstances of each case, is relevant to the issue before the court. The results of a blood-grouping test in a proceeding of this character, which excludes the husband as the father of the child, cannot be irrelevant to the prosecution of such proceeding, which seeks support for the child from one other than the husband, to rebut the presumption of legitimacy.
Both husband and wife in a paternity or support proceeding only are competent to prove nonaccess during wedlock (Family Ct. Act, § 531), and here the wife only testified. Any question raised, or in the court’s mind, respecting the husband’s failure to testify as to nonaccess, is quickly dispelled by the proof of the results of the blood test, which are much more eloquent and conclusive than any testimony from him as to nonaccess. There is no question that the entire proceeding hinges on the admissibility of such evidence, without which, in view of all the circumstances, the petitioner could not have sustained her burden of proof in rebutting such presumption. It is held that the result of the blood-grouping test, which excludes the petitioner’s husband as the father of this child, is relevant, admissible and conclusive and the presumption of legitimacy is conclusively rebutted. A holding otherwise would outrage common sense and reason.
This court is gravely concerned with the effect of all this on the child, who, together with petitioner’s husband, is not a party to or represented in any way in this proceeding. However, as was pointed out by the court in Commissioner of Public Welfare v. Koehler (284 N. Y. 260, 267): “ An order adjudging that some person other than the mother’s husband is the father of the child and ordering him to provide for its support is, it is plain, not a binding adjudication of illegitimacy. It does not establish the status of the child nor would it be competent evidence to establish illegitimacy in any proceeding to which others are parties.”
The legal principle established by this case clearly distinguishes the proceeding at bar from Kill v. Kill (supra), and the reasoning of the court there in denying the motion has no application to the facts and circumstances in this proceeding.
*****
From all the evidence the court finds the facts as presented in the testimony adduced in behalf of petitioner, that the proof of paternity is so clear and convincing as to be entirely satisfactory, and that a genuine belief is created in the mind of the court that respondent is the father of the child in question. It is found that the parties engaged in sexual relations over a *340 period of time extending from about the end of October, 1961, as a result of which petitioner became impregnated shortly after December 26, 1962, giving birth to a male child on September 17, 1963, that respondent orally acknowledged his paternity of the child, and that he is the natural father of such child.
*****
Submit order accordingly.