OPINION OF THE COURT
Kevin C. Fogarty, J.
The sole issue before the court at this time is whether the court can order a human leucocyte antigen blood tissue test (hereinafter referred to as HLA blood test) in a custody proceeding on the motion of one of the parties.
The relevant facts in this controverted case are as follows. The petitioner mother instituted this proceeding against the respondent father for the purpose of reacquiring the custody of Kimberly, born May 20, 1974. The child has been living with the respondent since sometime in 1975 although the exact dates and the circumstances surrounding Kimberly’s residence with her father are in dispute. The petitioner was unable to locate the respondent and Kimberly until March, 1981 at which time she commenced the instant proceeding.
The parties to this action are divorced. Both the petitioner and respondent obtained ex parte divorces in California and Illinois, respectively. Both were awarded custody of the child in their judgments of divorce.
At the onset of a second hearing, a mistrial having been declared in the first hearing, the petitioner made an oral *566 motion requesting that the court direct that the parties and the child submit to an HLA blood test. Although the verified petition and the divorce decree of the petitioner name the respondent as the natural father, the petitioner is now claiming that he is not the biological father of Kimberly. The court notes that the petitioner has not named another man as Kimberly’s father in the respondent’s stead. Nor has she instituted a paternity proceeding in this court or in another court of competent jurisdiction to the court’s knowledge.
New York was one of the first States to recognize the value of blood tests in determining paternity, and, as early as 1935, authorized the courts to order parties to submit to blood-grouping tests. (Wylegala and Witebsky, Paternity Blood Tests — Science or Mystery, 7 Buffalo L Rev 209, 220.) The blood-grouping test statute found in the New York City Criminal Court Act enacted in 1935 has evolved over the past 46 years into two statutes contained in the Family Court Act, i.e., sections 418 and 532. While the Family Court must assent to a motion for a blood test in an article 5 paternity proceeding, granting such a motion under an article 4 support proceeding is discretionary. (Matter of Schneider v Schneider, 72 Misc 2d 423.)
Indeed, the statutes are still involved in the evolutionary process. Just last month, the New York State Legislature amended sections 418 and 532 of the Family Court Act. Pursuant to this latest enactment, the results of an HLA blood test may now be received in evidence to aid in the determination of whether the alleged father is or is not the father. According to the bill memorandum of the Judiciary Committee of the New York State Assembly, the enactment of the amendments would result in “an increase in the number of cases in which paternity can be successfully (and accurately) adjudicated”. The HLA blood test can predict the probability of an individual being a child’s father with up to 98% certainty, while the Landsteiner red cell test has the probability of 50 to 60% of showing an individual to be the father.
Nowhere else in the Family Court Act are there statutes providing for court-ordered blood tests to determine pater *567 nity. Article 5 includes section 532 of the Family Court Act so that the courts can successfully and accurately determine the paternity of a child born out of wedlock; article 4 includes section 418 of the Family Court Act in order to prevent a husband from being responsible for the support of a child whom he did not father. (Besharov, Practice Commentary, Supplementary Pamphlet, McKinney’s Cons Laws of NY, Book 29A, Part 1, Family Ct Act, § 418, p 99.)
It is an axiom of statutory construction that a court cannot by implication supply in a statute a provision which it is reasonable to suppose the Legislature intended intentionally to omit. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 74; Matter of Proppe, 46 Misc 2d 247, 249-250.) When it is urged that a particular statute should be construed to cover a matter not expressly mentioned in the act, the courts frequently assert that, if the Legislature had intended the statute to include the matter in question, it would have been easy for the Legislature to have done so. Therefore, the failure of the Legislature to include a matter within the scope of an act may be construed as an indication that its exclusion was intended. (Town of Trenton v Greene, 78 Misc 2d 976, 977; People v Bouton, 71 Misc 2d 1095, 1096-1097; Abelson v Abelson, 59 Misc 2d 172, 178-179.)
Applying these long-established principles of construction, the court must deny the petitioner’s motion for an HLA blood test. While the Legislature specifically included blood tests in articles 4 and 5 of the Family Court Act, it failed to include them anywhere else in the act. Thus, the court construes such omission as an indication that its exclusion from other articles of the Family Court Act was intended. This argument is especially forceful where, as here, a party claims a construction which makes a radical innovation in the law. This court will not read a blood test statute into a custody proceeding where none has been provided by the Legislature.
Moreover, where the construction claimed is inconvenient or leads to objectionable consequences, the court must adhere to the belief that if the Legislature intended legislation resulting in such consequences, it would have said so *568 in explicit language. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 74.) In the instant case, the court, finds that illegitimating a seven-year-old child who would lose all rights vis-a-vis the only father she has ever known would certainly fall within the category of objectionable consequences. The court refuses to be a party to such action.
The court is cognizant of CPLR 3121 (subd [a]) which states in part: “After commencement of an action in which * * * the blood relationship of a party * * * is in controversy, any party may serve notice on another party to submit to a * * * blood examination”. The court is also aware of the fact that although the presumption of legitimacy is one of the strongest and most persuasive known to law, modern advances in science, as well as reason and logic, compel a determination that said presumption is not conclusive but rebuttable. (Matter of Findlay, 253 NY 1, 7-8-; Anonymous v Anonymous, 1 AD2d 312, 316.)
In a case similar to the one before this court, the Appellate Division, Second Department, affirmed the Supreme Court’s refusal to grant a wife a blood-grouping test which she desired to support her claim that she was entitled to custody in that the husband was not the father of the child. (Hill v Hill, 20 AD2d 923.) Although in Hill the issue arose in a divorce action, the parallels between the two cases are many: the wife lived with the husband as his wife during the period of conception and birth of the child; the wife concealed from the husband the true paternity of the child; the husband supported the child; and the husband still claimed to be the father.
In affirming the denial of the blood-grouping test, the Appellate Division stated (supra, p 924): “Common sense, public policy, reason and the overriding consideration for the welfare of the child will bar a wife from bastardizing her child where, as here, she lived with her husband as his wife during the period of conception and birth of the child *** all the while concealing from him the adultery to which she now confesses for the sole purpose of securing the child’s custody.” (See, also, Matter of Montelone v Antia, 60 AD2d 603; Brite v Brite, 61 Misc 2d 10; Matter of Time v Time, 59 Misc 2d 912.)
*569 Accordingly, the motion is denied. This proceeding remains on the calendar for trial on April 22,1981 in Part V.