OPINION OF THE COURT
Alfred M. Lama, J.
This motion for reargument of the order of the Honorable Paul T. D’Amaro, dated December 17, 1982 is granted. After evaluation of the original papers filed in this matter, as well as the papers submitted on this motion for reargument, and after a full evidentiary hearing in this application held before me on February 24, 1983, this court adheres to the original determination made by the Honorable Paul T. D’Amaro.
There is an action for divorce pending in this court between the plaintiff Todd Lory and the defendant Christine Lory. On December 11, 1982, plaintiff brought on a motion for visitation by way of an order to show cause. On December 17, 1982, the Honorable Paul T. D’Amaro awarded plaintiff visitation rights with the infant issue of the marriage. There was no opposition to the original motion. Apparently, opposition to the motion for visitation was received shortly after the decision was issued by Judge D’Amaro. On December 22, 1982, defendant Christine *206 Lory moved, by order to show cause for an order granting leave to the defendant to reargue the motion and order of December 17, 1982. On January 11, 1983, the Honorable Paul T. D’Amaro determined that the parties raised substantial issues of fact which could not be determined on the papers alone. Accordingly, he directed a hearing before any Justice sitting at Special Term, Part V, following the payment of appropriate calendar fees and the filing of a note of issue. On February 16, 1983, this matter came before me, and, accordingly, a full evidentiary hearing was commenced.
The first issue raised by the plaintiff was whether service of the order to show cause was performed in accordance with the order of the Honorable Paul T. D’Amaro directing “personal service” as set forth in the order to show cause dated December 22, 1982. The court concluded that such service was in fact proper.
The remaining issue as to whether visitation was properly awarded to the plaintiff, Todd Lory, was adjourned until February 24, 1983, with the provision that pending the continuance of the hearing that visitation as set forth in the order of December 17,1982 be continued. On February 24, 1982, the hearing was continued. At that time the defendant challenged the order of visitation on the sole basis of her opinion that plaintiff Todd Lory was not the father of the infant issue of the marriage. Defendant contends that another man Michael DeLuca is in fact the true father of the infant.
The following testimony was elicited from the parties concerning their relationship up until the present time; plaintiff and defendant were married in July of 1978. The infant Jason Michael Lory was born on December 21,1981. Plaintiff is employed as catering manager of C.W. Post College and earns approximately $19,000 annually. The defendant wife is not employed, but does have some marital assets and is supported by her lover Michael DeLuca. Further testimony revealed that at the time of probable conception of the infant the plaintiff had access on numerous occasions to the defendant. During the pregnancy of the defendant the plaintiff husband states that he and his wife enjoyed a good relationship. Both attended natural *207 childbirth classes together and both participated in selecting the name of the infant Jason Michael Lory. There is no question that the plaintiff father supported and deeply cared for the infant child up until the separation of the husband and wife, and since the separation the plaintiff has attempted on numerous occasions to continue to support and visit with his child, only to be repeatedly rebuffed from doing so by the defendant. Yet his efforts to visit with his son have never ceased. Even the father of the defendant took the stand and testified that the plaintiff has a great love for Jason Michael Lory.
The defendant wife did not dispute plaintiff’s assertions regarding plaintiff’s love for his son and his determination to visit and support Jason Michael Lory. She claims that while the plaintiff has tried to support both the infant and herself she has refused such support based upon her belief that the plaintiff is not the father of her child. She contends that the father of her child is Michael DeLuca, the man she is presently living with and whom she hopes to marry. Defendant acknowledges that during her pregnancy and for sometime thereafter she held out the plaintiff as the father of her child. However, she claims that in the spring of 1982 she, Mr. DeLuca and Jason Michael Lory voluntarily submitted to a human leucocyte antigen test (hereinafter HLA test). The results of the HLA test were received by her in June, 1982. She alleges that the results of such test “practically prove” that Michael DeLuca is the father of her child. Two weeks following her receipt of the results of the HLA test, defendant alleges she “mustered up the courage” and informed her husband of the results. Since that time she has refused to allow the plaintiff to visit or support Jason Michael Lory.
Defendant moves to introduce the results of the HLA test into evidence pursuant to CPLR 4518 as proof that the plaintiff is not the father of Jason Michael Lory. Defendant acknowledges the strongest presumption in the law is the presumption of legitimacy, however, defendant maintains that the results of this HLA test if admitted into evidence will rebut the presumption or at least shift the burden of the claim of legitimacy onto the shoulders of the plaintiff.
*208 The attorney for the plaintiff does not doubt the strength of the HLA test. He does however question the propriety of its admission into a hearing regarding visitation. It is the contention of the plaintiff that if the defendant wishes to raise the issue of legitimacy of the infant, such challenge should be made through a declaratory judgment action.
This court reserved decision as to the admission of the results of the HLA test into evidence.
For the reasons set forth herein the court is firmly in favor of the position advanced by the plaintiff.
In this pendente lite application for visitation there is only one issue to be decided by the court. That is, whether the results of an independently obtained HLA test may be introduced into evidence pursuant to CPLR 4518 (subd [c]) where the results of that test are to be solely utilized by the wife as a vehicle to attack the status of the plaintiff as the father and to declare the infant illegitimate.
“CPLR 4518. Business records * * *
“(c) Other records. All records, writings and other things referred to in sections 2306, 2307 and any record and report relating to the administering and analysis of a blood grouping test or human leucocyte antigen test administered pursuant to sections four hundred eighteen and five hundred thirty-two of the family court act are admissible in evidence under this rule and are prima facie evidence of the facts contained, provided they bear a certification or authentication by the head of the hospital, library, department or bureau of a municipal corporation or of the state, or by an employee delegated for that purpose.”
The court is of the opinion that merely because the HLA test was not administered pursuant to court direction under sections 418 and 532 of the Family Court Act would not per se void its admission into evidence under CPLR 4518 (subd [c]). This court knows of no rule which excludes the results of an HLA test or blood-grouping test simply because the test was not ordered by a court. (Matter of Oliver v England, 48 Misc 2d 335; Moore v Murray, 311 NYS2d 794.) To refuse to allow a test into evidence simply because the test was not performed under court direction would be a superfluous construction of the statute because *209 such a rigid construction might dissuade parties from voluntarily expediting a proceeding such as a paternity proceeding where the need to determine questions of support is immediate. In Oliver v England (supra), such a question was directly before the court. There, in a paternity proceeding, the petitioner (wife) sought to establish that the respondent (her lover) was the father of her infant. Prior to the proceeding the petitioner, her husband and the infant child submitted to blood tests which established that the husband was excluded as the father of the child. When the petitioner attempted to introduce the results of tests into evidence the respondent objected based upon the ground that the test was conducted without a court order. The court overruled the respondent’s objection and admitted the results of the blood tests into evidence. The rationale behind the evidentiary ruling was grounded in the belief that the results of the blood test would logically tend to prove one of the principal facts in issue (paternity) and therefore the evidence barring the violation of some exclusionary rule was both relevant and admissible.
Applying the same legal reasoning to the case at bar the court concludes that the results of the HLA test are irrelevant and immaterial to a pendente lite application for visitation as the results of such test will not logically tend to prove or disprove any of the principal facts in issue. Therefore the results of this test will not be admitted into evidence. (Richardson, Evidence [9th ed], § 4, p 4.)
Under section 240 of the Domestic Relations Law in a pendente lite application for visitation the rule is that in the absence of proof that visitation with the parent is inimical to the welfare of the child, the parent who does not have custody of the child must be granted reasonable visitation privileges pending the trial. (Quinn v Quinn, 87 AD2d 643.)
The denial of the right of a parent to visit or see his child is a drastic remedy which should be based on substantial evidence. (Kresnicka v Kresnicka, 42 AD2d 607.) Pending the trial and final determination of issues concerning the marriage the court should attempt to maintain the status quo of the parties. Here the defendant seeks to inject the issue of the paternity and legitimacy in a pendente lite *210 application to which paternity and illegitimacy are irrelevant. Defendant does not question the fitness of the plaintiff in his role as a father up to the date of this application, but, instead seeks to attack the status of the plaintiff as the father and at the same time indirectly seeks to bastardize the infant issue of the marriage.
The courts of this department have consistently frowned upon applications for blood tests during proceedings where the legitimacy of a child is improperly raised by a party. (Hill v Hill, 20 AD2d 923; Matter of Virginia E. E. v Alberto S. P., 108 Misc 2d 565.) In Hill v Hill (supra), a divorce action, the plaintiff husband sought custody of his nine-year-old son born to the defendant wife during the marriage at a time the parties were living together as man and wife. During the custody proceeding the wife asserted that the infant was not issue of the marriage. As proof of her contention she sought to compel blood examinations pursuant to CPLR 3121. While recognizing the power of the court to order such tests where legitimacy is in issue the court refused to order the tests because it determined legitimacy was not an issue.
“Common sense, public policy, reason and the overriding consideration for the welfare of the child will bar a wife from bastardizing her child where, as here, she lived with her husband as his wife during the period of conception and birth of the child and for six years thereafter — all the while concealing from him the adultery to which she now confesses for the sole purpose of securing the child’s custody.” (Hill v Hill, supra, p 924.)
Again in Matter of Virginia E. E. v Alberto S. P. (supra), the sole issue before the Queens County Family Court was whether the court could order an HLA test in a custody proceeding on the motion of one of the parties. The court conducted a statutory review of the various sections of the Family Court Act and concluded that no such tests were permissible in a custody proceeding because the New York State Legislature by specifically including blood tests in articles 4 and 5 of the Family Court Act, exhibited a statutory intent not to allow blood examinations in other proceedings where those sections of the law were silent on the subject.
*211 This court is compelled to follow the same rationale as utilized in the two cases above. The presumption of legitimacy though rebuttable, is one of the strongest and most persuasive known to law. (Matter of Findlay, 253 NY 1, 7-8; Anonymous v Anonymous, 1 AD2d 312, 316.) Here, the testimony elicited from the parties demonstrates that the plaintiff had access to the defendant on numerous occasions during the period of conception of the child. Plaintiff participated in natural childbirth classes with the defendant and defendant held him out at all times as the father of her child. When the child was born the plaintiff was overwhelmed with joy. The birth certificate of Jason Michael Lory lists the plaintiff as his natural father. Prior to the defendant’s exit from the marital premises the husband cared for the infant by feeding him, changing his diapers, etc. Since the removal of the infant from the marital home the plaintiff has consistently maintained his assertion that he is the father of the child, and has religiously sought visitation with his son. Even the defendant and her father testified to the plaintiff’s “great love” for his son. Finally, the record is barren as to any meretricious relationship between the defendant and the putative father during the time of conception. Based on the above, and in considering that this is a pendente lite application for visitation, the court will not read into any provision of the Domestic Relations Law or the Civil Practice Law and Rules the requirement that a party must submit to blood tests or that the court must allow the introduction into evidence of the results of HLA tests where the sole purpose of such tests is to attempt to bastardize the issue of the marriage. Such a conclusion would be a final determination as to the status of both the father and the infant issue of the marriage before the actual trial of this action. The court is confident that maintaining the status quo pending the trial of this action is the proper determination. As was succinctly stated in the concurring opinion of Justice Silverman in State of New York ex rel. H. v P. (90 AD2d 434, 441), “whether the husband is or is not the biological parent is almost, if not quite, irrelevant to the issue of custody and visitation. If it has any remote relevance, the probative value of such evidence is far outweighed by the possible damage to the child.”
It is noted that the defendant has also commenced a paternity proceeding in the Suffolk County Family Court. *212 The court feels it necessary to point out to the parties that such proceeding is primarily intended to insure that the child is financially provided for by the putative father and not the State. The order of filiation has a limited effect on the child’s status. (Matter of Salvatore S. v Anthony S., 58 AD2d 867.) The order in such a proceeding would not constitute an adjudication binding on them (the child or the husband) or persons claiming through them that the child is or is not the legitimate offspring of married parents. (Czajak v Vavonese, 104 Misc 2d 601.) In addition such an order “ ‘does not establish the status of the child nor would it be competent evidence to establish illegitimacy in any proceeding to which others are parties’ ” (Matter of Salvatore S. v Anthony S., supra, p 868; Matter of Melis v Department of Health of City of N. Y., 260 App Div 772; 1 Schatkin, Disputed Paternity Proceedings, Supp, § 16.03).
It appears that if the defendant continues in her desire to challenge the status of both plaintiff and the infant issue of the marriage the proper vehicle for such an action would be a declaratory judgment action. It has been stated that a declaratory judgment action is appropriate to determine the status of a child, legitimacy and the like. (Matter of Melis v Department of Health of City of N. Y., supra.) In such an action, maintainable in the Supreme Court, all persons interested or likely to be affected by the determination would have to be joined or impleaded as parties and “the infant, whose rights are paramount, should be made a party in the manner provided by law * * * and a guardian ad litem appointed to protect its interests.” (Matter of Melis v Department of Health of City of N. Y., supra, p 775.)