OPINION OF THE COURT
Erik S. Pitchal, J.
On March 7, 2013, the court directed the Administration for Children’s Services (ACS), by and through its voluntary contract agency, St. Dominic’s Home, to discharge the subject children to their mother on a trial basis. The court summarized its reasoning on the record and indicated that this written decision would follow.
I. Procedural Background
ACS initiated this child protective proceeding by filing a petition on or about January 26, 2011, alleging that Maribel A. had neglected her children, Nicole and Emili, by failing to provide them adequate supervision and guardianship due to the use of drugs and untreated depression, and that she failed to provide *256 them adequate food, clothing, and shelter. A fact-finding entered as to the inadequate supervision and guardianship claims on April 22, 2011, on Ms. A.’s consent, pursuant to Family Court Act § 1051 (a). Judge Sherman entered a dispositional order on July 5, 2011, placing the children with the Commissioner and requiring Ms. A. to complete drug treatment (including aftercare) and mental health treatment in order to reunify safely. Pursuant to Family Court Act § 1089, permanency hearings were completed in February and August 2012 and on January 22, 2013.[1] The court-approved goal at each hearing was return-to-parent, though in the August 2012 and January 2013 orders the court also indicated that the agency should plan concurrently for adoption. At each hearing, the court found that the agency had made reasonable efforts towards the completion of the return-to-parent goal.
Meanwhile, in August 2012, St. Dominic’s initiated a proceeding pursuant to Social Services Law § 384-b to terminate Ms. A.’s parental rights and free her children for adoption. Issue was joined on the termination of parental rights (TPR) petitions on November 28, 2012. This court inherited the TPR docket on January 28, 2013, when the parties appeared for a pretrial conference. Finding that the case was trial-ready, the court set the matter down for fact-finding to commence on March 28, 2013, with 4V2 hours of trial time reserved.
During the January 28 conference on the TPR docket, counsel for the respondent indicated that his client had requested that the agency “trial discharge” the children to her, as she had completed her service plan, but that the agency had thus far refused. Counsel for St. Dominic’s explained that Ms. A. did not have stable housing of her own, and while he acknowledged that Ms. A. could bring the children to the Department of Homeless Services (DHS) to receive shelter via the DHS Prevention Assistance and Temporary Housing (PATH) program, he stated his client’s position that it would be preferable for the family to obtain a permanent apartment through the New York City Housing Authority (NYCHA) or a private landlord. Because Ms. A. did not yet have such an apartment, the agency was unwilling to commence a trial discharge. As the parties were appearing before the court for a pretrial conference on a TPR docket, the court suggested that if they were unable to find an amicable resolution to this dispute, counsel should file an appropriate motion on the article 10 docket.
*257 On January 30, 2013, respondent’s counsel filed a motion on this neglect docket, requesting an order “Modifying the Dispositional Order dated January 3, 2012 [sic] to a Trial Discharge of Nicole and Emili to his [sic] mother.”[2] The Attorney for the Children filed an affirmation in support of the mother’s motion; she requested that the court go one step further and terminate the children’s foster care placement and release them to their mother with 12 months of ACS supervision. Counsel for ACS filed an affirmation in opposition to the motion, declaring simply that ACS “does not support a trial discharge at this time” without further explanation or argument. Even though St. Dominic’s is not a party to the article 10 docket (it is the petitioner on the TPR matter only), counsel for that agency appeared and also filed an affirmation in opposition, arguing that the court does not have the authority to grant the requested relief.[3]
The motion was heard on February 15, 2013. At the conclusion of that appearance, the court ordered:
“As ACS has determined that lack of adequate housing is the only barrier to discharge of the children from foster care, SSL § 409-a(5)(c), ACS and/or its agent, St. Dominic’s, is directed to provide housing assistance as required by statute, regulation, and policy to the mother for the purpose of reunification of her children.”
The court adjourned the case for three weeks to see if, with this assistance, she could obtain housing that would be sufficient for ACS to consent to a trial discharge.
*258 The parties reconvened on March 7, 2013. The mother did not yet have the type of housing that would satisfy ACS. After hearing further argument from counsel, the court directed ACS to commence a trial discharge on March 21, 2013, at 5:00 p.m. Ms. A. was directed to enter the PATH system or find other suitable housing in advance of the trial discharge; continue with individual counseling during the pendency of the trial discharge; submit to random drug screening and test negative; ensure the children attend all necessary and regularly scheduled medical and dental appointments; participate in meetings at Emili’s school; and cooperate with reasonable agency supervision. The court also ordered that, pursuant to Family Court Act § 255, DHS make all reasonable efforts to provide temporary shelter to the A. family within the Bronx and as close to the maternal aunt’s home as possible.
II. Facts
The following facts are not in dispute. (Feb. 15, 2013 tr at 15-16, 26.) All parties agree that Ms. A. has completed every aspect of her service plan and that the only remaining barrier to discharge of the children to her care is her lack of suitable housing. (Mar. 7, 2013 tr at 9.) She completed her outpatient drug rehabilitation program on October 12, 2012, and she completed an aftercare program on November 30, 2012. (Feb. 15, 2013 tr at 53.) She has submitted to random drug screens since then and has tested negative. (Mar. 7, 2013 tr at 29.) She completed a parenting skills class and has been consistently engaged in individual counseling. (Feb. 15, 2013 tr at 13.) She has been consistently visiting her children, with ever-increasing levels of frequency and decreasing levels of supervision, moving from agency supervised visits to visits supervised by the children’s maternal aunt (who is their foster mother), to unsupervised visits, to overnight visits occurring at the children’s maternal grandmother’s home.[4] (Feb. 15, 2013 tr at 14.) The children have been in the home of their maternal aunt from the inception of their remand into foster care, where they are happy and stable. Ms. A. currently spends a great deal of time at her sister’s home, assisting the maternal aunt/foster mother in caring for the children. (Id.)
The only factual matter on which the parties do not agree is what type of housing Ms. A. needs to have before a trial dis *259 charge of the children to her care would be in their best interests. Counsel for the mother and the attorney for the children stated that given the mother’s completion of her service plan, the evident bond she has with them, and the lack of any safety concerns, what is best for them is to be reunited with her immediately, even if it means that they live in a family shelter.
Counsel for St. Dominic’s stated that because PATH does not provide permanent housing, it would be better for the children to wait to be reunified until the mother has a long-term apartment. (Feb. 15, 2013 tr at 17.) The parties did agree that if the children remain in a foster care placement, the family is eligible for a so-called “ACS priority code” within NYCHA.[5] Public housing is scarce, and NYCHA gives priority to people based on certain public policy goals. One of these goals is to speed the reunification of families after a spell of foster care. Families who are in the PATH system do not receive this priority, even if immediately before living in PATH the children were in foster care.
The parties also agreed that no one can predict how long it might be before the A.s have access to a NYCHA apartment with the ACS priority code. Counsel for ACS stated that “there’s usually an estimated time line, which can vary from around two months to more.” (Mar. 7, 2013 tr at 11.)
The court takes judicial notice of the fact that due to Hurricane Sandy, anywhere from 10,000 to 40,000 people in New York City public housing were displaced. (See James Barron, Eric Lipton & Ray Rivera, With $200 in Federal Housing Aid, Officials Begin Relocating the Displaced, NY Times, Nov. 5, 2012, available at http://www.nytimes.com/2012/ll/06/nyregion/ housing-relocation-begins-after-hurricane-sandy.html?_r=0.) Sandy damaged 402 buildings with over 35,000 units owned by NYCHA; close to 20% of the overall NYCHA stock of apartments were in Sandy-damaged buildings. (Furman Center for Real Estate and Urban Policy Sandy’s Effects on Housing in New York City 4-5 [Mar. 2013], available at http://furmancenter.org/files/ publications/SandysEffectsOnHousinglnNYC.pdf.) Another 24,000 units of affordable housing (such as those paid for with Federal Section 8 vouchers) were in the zone of Sandy flooding. (Id.)
It should be noted that at the hearing on February 15, counsel for ACS stated that “the ACS policy is that shelter placements *260 can be considered as a last alternative after exploring other housing options.” (Feb. 15, 2013 tr at 52-53.)
III. Analysis
In her motion, Ms. A. seeks an order from the court directing ACS to discharge her children to her care on a trial basis. In the case of a trial discharge, the child remains in the legal custody of the agency even though she is physically in the care of her parent. (Family Ct Act § 1089 [d] [2] [viii] [C]; Matter of Star Leslie W., 63 NY2d 136, 145 [1984] [holding that agency could still maintain a TPR prosecution because child, on trial discharge, was in the petitioner’s legal custody].) The agency asserts that the court lacks the legal authority to enter such an order, and that in any event, it is simply not in the children’s best interests to be reunified with their mother at the present time, since the only housing option the family has is through the DHS PATH shelter system.
The court concludes that it is in the children’s best interests to be reunified with their mother as soon as possible. The family is close, as close as can be possible for a family separated by foster care. There is absolutely no disagreement about Ms. A.’s fitness as a parent at this point. The only issue is whether the status quo is better for them than being with their mother full time, even if that means living in a shelter.
While the court appreciates the agency’s concerns that life in the shelter system could be stressful, which could possibly lead to Ms. A. relapsing from her sobriety, the court finds these concerns to be too speculative to be the basis of a best interests determination. In any event, the concerns can be sufficiently addressed in two critical ways. First, a trial discharge — in contrast to a termination of placement — is easily changed, should things not go well. With a trial discharge, the agency can remove the children from their mother’s physical custody at any time cause warrants it, without the full degree of legal process required if she were to have legal custody. Second, Ms. A.’s counsel represented that DHS will give due consideration to court orders directing it to place families in the PATH system in certain geographic areas; thus the court has ordered DHS to place the A.s in a shelter as close to Ms. A.’s sister as possible so that she has ongoing familial support nearby.
Moreover, should the children remain in foster care awaiting reunification in a NYCHA apartment with use of the ACS priority code, there is simply no telling how long it will be before they live with their mother again. Neither agency staff nor *261 counsel for ACS could offer any concrete time estimate. The City should not be in the business of providing foster care to families who do not need it when there is an acceptable housing option available, even if that housing is not ideal. When considering whether continued foster care placement is in the child’s best interests, as the court is required to do under section 1089 (d), the court should consider whether foster care is still needed. (Cf. Family Ct Act § 1065 [b] [“(i)f the court determines after hearing that continued placement does not serve the purposes of this article, the court shall discharge the child from the custody of the agency”].) Here, the court concludes that the children do still need the protection of being in the legal custody of the agency, in case things go poorly, but they do not need to be in the physical, daily care of the Commissioner.
Being homeless is not a basis for a finding of parental neglect in the first instance, unless the parent refuses reasonable assistance. (Matter of Alexander L. [Andrea L.], 99 AD3d 599 [1st Dept 2012]; Family Ct Act § 1012 [f] [i] [A] [failure to supply adequate shelter constitutes neglect only if parent is financially able or is offered reasonable means to do so].) Residents of New York have a right to shelter. (NY Const, art XVII, § 1.) Similarly, housing should not be a barrier to reunification after a parent has successfully completed a service plan in an article 10 case. Thus, given that there is no legal prohibition to a trial discharge when the reunified family has no housing option other than PATH, and considering that ACS policy accepts the possibility that some families must reunify in this manner, the court concludes that Nicole and Emili would be better served by being with their mother, even in a shelter, than remaining in foster care.
It should also be noted that if the children are trial discharged, legal custody remains with ACS and nothing would prohibit St. Dominic’s from continuing to prosecute the TPR. (Mar. 7, 2013 tr at 25; see Matter of Star Leslie W., 63 NY2d at 145.) However, if the court were to modify the current permanency order to return the children to the legal custody of their mother (with or without continued ACS supervision), as the attorney for the children requested in her papers, this would most likely put the TPR in jeopardy. (Mar. 7, 2013 tr at 25; Feb. 15, 2013 tr at 40.) Thus it would appear that ordering a trial discharge, as opposed to terminating the placement entirely, would satisfy the agency’s concern in this regard.
*262 Perhaps ironically, the agency nevertheless argues that the court does not have the authority to order a trial discharge, while conceding that the court does have the authority to grant the greater relief of termination of placement. Citing Matter of Lorie C. (49 NY2d 161 [1980]), and Matter of Christopher G. (Priscilla H.) (82 AD3d 1549 [3d Dept 2011]), counsel argues that under the separation of powers doctrine, the Family Court cannot direct the agency to trial discharge foster children, because commencing a trial discharge is a discretionary decision that lies exclusively within the executive branch, not the judiciary. (Fraidstern affirmation 1111 4-6.)
While the court certainly respects the separation of powers principle, the cases counsel cites do not support the claim that only the executive branch can decide to trial discharge foster children. Lorie C. involved an attempt by a family court judge to impose systemic reform of the St. Lawrence County foster care system by transferring the power to certify certain foster homes from the Department of Social Services to the Probation Department. The Court of Appeals held that the trial court’s order exceeded the court’s authority under Family Court Act § 255 and was an encroachment on the specific statutory authority of DSS, granted by Social Services Law § 398, to certify foster homes. As explained below, in this case, the court’s order directing a trial discharge is not made under section 255, but rather is a modification of the prior section 1089 permanency order, done pursuant to Family Court Act § 1061.
Moreover, insofar as there is no explicit statutory provision vesting the power to commence a trial discharge exclusively in the executive branch (and agency counsel has cited none), an order from the Family Court directing ACS to begin a trial discharge cannot be an encroachment of executive authority the way the trial court’s directive in Lorie C. was. Indeed, counsel’s interpretation of Christopher G. is incorrect on this point. Christopher G. does not hold that the power to trial discharge a child is the “peculiar duty” of the executive, as he asserts. (Fraidstern affirmation 1Í 3.) Rather, Christopher G. holds that under section 1089, the executive cannot final discharge a foster child without approval of the court. (Christopher G., 82 AD3d at 1551.)
In contrast, the court is aware of at least two First Department cases that implicitly hold that (1) the Family Court has the authority to order a trial discharge, and (2) that such orders are reviewed on an abuse-of-discretion basis. In Kimberly M., *263 the court affirmed a decision by the Family Court ordering a trial discharge, finding that the Referee’s conclusion that a trial discharge was in the children’s best interests was “amply supported by the evidence.” (Matter of Kimberly M. [Nancy L.], 67 AD3d 562, 563 [1st Dept 2009].) In Umer K, the Family Court’s trial discharge order was reversed because the Appellate Division’s review of the record led to a conclusion that the trial court had abused its discretion. (Matter of Umer K., 257 AD2d 195, 197 [1st Dept 1999].) Indeed, it is not unheard of for the Appellate Division to modify a Family Court order and order a trial discharge itself, based on current factual information. (See Matter of Isaiah J., 65 AD3d 629, 630-631 [2d Dept 2009].)
The agency’s counsel is certainly correct that there is no explicit statutory provision giving the court the authority to order a trial discharge, any more than there is such a provision vesting this authority solely in the executive. Given the lack of explicit judicial authority, the question remains what the source of authority is for such an action. In Kimberly M. and Umer K., the Appellate Division cited no provision of law. In Isaiah J., the Court cited section 1089, which defines a trial discharge but does not in fact give the judicial department the explicit authority to commence one.
This court agrees with one commentator who suggests that section 1089 vests the judiciary with “virtual plenary powers to determine, modify, or change a disposition.” (Merril Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 1089 at 219 [2009 ed].) Isaiah J. is the perfect example of this power. When the appeal was argued, it had been a year since the children were removed and there had been no permanency hearing in the interim. The Appellate Division simply inserted itself into the proceedings and directed a trial discharge to commence, with certain conditions.
When entering a permanency order, section 1089 (d) (2) (viii) gives the court the authority to enter “any other findings or orders that the court deems appropriate.” The broadness and flexibility in this language would appear to be sufficient basis for the court’s ruling in Isaiah J. and this court’s order on the instant motion.[6] The court concludes that there is “sufficient cause” under section 1061 to modify the permanency order of *264 January 22, 2013, by adding a requirement that the agency commence a trial discharge, with certain specific conditions outlined above, for the reasons detailed in this opinion concerning why a trial discharge is in the children’s best interests.
Thus, agency counsel’s argument about separation of powers is inapplicable here. The Family Court has implicit and inherent authority to direct a trial discharge. Unlike other areas of law in which administrative agencies have statutorily granted discretion that cannot be reached by the courts on anything other than an abuse-of-discretion review standard, the Family Court Act vests enormous power in the courts to robustly oversee the day-to-day work of social service agencies. To take two examples, section 1015-a gives the court the authority to direct agencies to provide specific services in specific cases (so long as the services appear in the local district’s annual plan). Additionally, section 1017 permits the court to remand a child to the Commissioner’s custody but to restrict the particular foster home where the child may be placed. Clearly, the legislature has entrusted to the courts the role of ensuring that children who need protection are properly cared for when in the custody of social welfare officials. It is thus not surprising that courts have “virtual plenary powers” to modify dispositions in whatever way the court deems appropriate. This is not the case in some other states, but it is so in New York. (Cf. Care and Protection of Isaac, 419 Mass 602, 646 NE2d 1034 [Mass 1995]; Care and Protection of Jeremy, 419 Mass 616, 646 NE2d 1029 [Mass 1995].)
Counsel for the agency’s other arguments are unavailing. The agency complains that respondent’s motion is an unfair second bite at the apple, noting that she asked the Referee for a trial discharge at the January permanency hearing; having lost, the agency claims, her sole remedy is to appeal the permanency order to the Appellate Division. (Mar. 7, 2013 tr at 45.) However, this court finds that there have been sufficient changed circumstances between the time of the permanency hearing and the time the court entered its order directing a trial discharge on March 7. Specifically, Ms. A. had more than six additional weeks of sobriety, and several successful unsupervised, overnight *265 weekend visits with her children. These facts only add to the positive record she presented to the Referee on January 22 and make her case for a trial discharge being in their best interests that much stronger.
Agency counsel also argues that his client did not receive “due notice” under section 1061 that the respondent was seeking a modification of the January 22 permanency order. (Mar. 7, 2013 tr at 42.) This contention is without merit. While respondent’s notice of motion does refer to a January 3, 2012, dispositional order (when in fact the disposition in this case occurred on July 5, 2011), it was quite clear to all parties what relief she was seeking in this motion. Agency counsel wrote a cogent affirmation in opposition that was directly on point, and he was amply prepared with appropriate arguments at the motion hearing dates of February 15 and March 7.
Finally, counsel argues that the court improperly denied the agency an evidentiary hearing on the respondent’s motion. (Mar. 7, 2013 tr at 42.) Section 1061 does not require such a hearing, and in any event, the facts in this matter were undisputed. The only issues in contention were (1) whether the undisputed facts lead to a conclusion that trial discharge is in the children’s best interests, and (2) whether the Family Court has the authority to order the agency to commence a trial discharge. The court afforded counsel two hours of argument over two appearances to be heard on these questions.
IV Conclusion
For the foregoing reasons, the court has issued an order directing the agency to commence a trial discharge of the children.

. The permanency hearings were conducted by Referee Catherine Guido.

. As alternative relief, the motion sought an order directing the agency to permit the mother to have unsupervised overnight weekend visits, but the court understands that such visits were already occurring by the return date, if not sooner.

. If in the briefing of the motion ACS tacitly deferred to its contractor, at the second hearing date it did so explicitly. Counsel for ACS remained silent except to provide factual information known only to ACS and agreed to permit St. Dominic’s lawyer to argue on ACS’s behalf. (Mar. 7, 2013 tr at 15.) The court notes that three lawyers from ACS have handled this matter in the short time that it has been on the court’s docket. Mr. Ron Ceretta filed the ACS opposition papers to the motion; Ms. Stephanie Schwartz appeared at the February 15 hearing; and Ms. Leora Nathan appeared on March 7. While the court does not believe that St. Dominic’s itself has standing to appear on the article 10 docket, and while no legal authority was provided that would allow ACS to retain private counsel to argue its position on a motion hearing in an article 10 case, the court accepts the arrangement for the purpose of this motion.

. Evidently the grandmother’s home is not an appropriate discharge address. There is sufficient space for a weekend overnight visits, but not for a long-term residence.

. See Administration for Children’s Services, Housing Support Services, available at http://www.nyc.gov/html/acs/html/support_families/housing.shtml.

. While not directly bearing on New York law, the court notes that federal regulations concerning federal financial participation in states’ foster care systems contemplate that state courts will have the authority to order a trial *264 discharge. These regulations provide that if a child returns to foster care directly from a failed trial discharge that lasted longer than six months, the state need not reestablish the child’s eligibility for Social Security Act title IV-E funding so long as a court ordered the trial discharge to last past the six-month mark. (45 CFR 1356.21 [e].)