*927 OPINION OF THE COURT
Ann E. O’Shea, J.
On March 8, 2013, the Administration for Children’s Services (ACS) filed a petition against respondent mother and respondent father, alleging that their now nine-month-old son VE, Jr., born on December 25, 2012, is a neglected child as a result of his parents’ misuse of drugs. VE, Jr. was removed and remanded to the care and custody of the Commissioner. After a Family Court Act § 1028 hearing on April 25, 2013, the application for return of VE, Jr. was denied and the remand continued.
On July 10, 2013, Edwin Gould Services for Children and Families (EGS or the agency), the foster care agency supervising VE, Jr.’s placement, moved by order to show cause for an order: (1) authorizing the agency to place VE, Jr. in the home of his maternal grandparents; and (2) directing ACS to file an application for expedited placement under the Interstate Compact on the Flacement of Children (ICFC) (Social Services Law § 374-a).[1] In support of its application, EGS submits the affirmation of counsel and a report of a home visit by Sharon Merritt, LMSW, EGS’s “Home Finding Director.” According to the report, the grandparents have expressed interest in becoming “permanent resources” for VE, Jr. and are seeking certification as kinship foster parents so that VE, Jr. can be placed with them. EGS reports that the grandparents are married, reside at an undisclosed location in New Jersey,[2] and own “two successful jewelry stores.” Their 2,900-square-foot, two-bedroom, “tastefully decorated” home was found to be suitable and safe for the child.
The mother opposes the motion on the grounds that the grandparents are not “suitable relatives” pursuant to Family Court Act § 1017, as any such placement with them would undermine reunification of the child with his parents. The mother reports that she and the grandparents have not been on *928 good terms for over a decade. According to the mother, the grandparents were not supportive of her or her unborn child during her pregnancy, and they neither offered nor gave her or VE, Jr. any assistance after his birth. Further, the mother states that the grandparents repeatedly make negative comments about her and the father, and have vowed to use all their resources to take VE, Jr. from her. The mother’s allegations are supported in the EGS report.
The grandparents had no contact with VE, Jr. for the first six months of his life, until EGS arranged for them to have visitation.[3] Moreover, the grandparents have not filed a petition for custody or visitation or otherwise sought any independent right with respect to their grandson. They did, however, hire an attorney to assist them in seeking to be certified as kinship foster parents and to expedite the ICFC process to permit VE, Jr. to be placed with them. As evidenced by its present order to show cause, EGS has assiduously encouraged and supported the grandparents in their quest, even to the extent of interfering with the mother’s visitation in order to accommodate the grandparents. According to the mother, on July 15, 2013, the EGS caseworker told the mother in the middle of one of her twice-weekly visits with VE, Jr. to leave and return in one hour to permit the grandparents to visit, with the result that the mother’s visit was cut in half.
The mother reports that the grandparents live in North Caldwell, New Jersey, far from her home in Brooklyn, which would make it virtually impossible for her to visit VE, Jr. on any regular basis as she does not own a car. The mother is convinced that not only would the grandparents not be supportive of reunification efforts but they would attempt to thwart any such efforts. For these reasons, the mother asks the court to deny the motion and leave VE, Jr. in the nonkinship home in which he currently resides or, alternatively, place VE, Jr. with his paternal aunt, who lives in a two-bedroom apartment in Brooklyn.
EGS is an agency that, under contract with ACS, provides foster care services to children (see e.g. Matter of Ta Fon Edward J.B., 6 AD3d 611 [2d Dept 2004]).[4] As such, it has no indepen *929 dent identity in a neglect proceeding nor any statutory right to compel its principal — ACS—to do anything. Moreover, EGS is not a party to a neglect proceeding (see Matter of Nicole A. [Maribel A.], 40 Misc 3d 254, 257 and n 3 [Fam Ct, Bronx County 2013]), and has been granted no authority by the legislature as a “nonparty” to intervene or ask for relief. Although other non-parties are given limited rights to intervene or to be heard in portions of neglect proceedings (see e.g. Family Ct Act §§ 1035 [adult sibling, grandparent, aunt or uncle], 1089 [b] [2] [foster parents and preadoptive parents]), contract agencies are not included among them. Even in those circumstances in which a contract agency is required to be given notice, such as notice of the scheduling of a permanency hearing (Family Ct Act § 1089 [b] [1] [ii]), no concomitant right to be heard accompanies the right to notice, although it does for other nonparties (compare Family Ct Act § 1089 [b] [1] [ii] [notice to agency of the scheduling of a permanency hearing] with Family Ct Act § 1089 [b] [2] [notice to preadoptive and foster parents of a permanency hearing and a right to be heard]).
There are only two references in the Family Court Act to the participation of a contract agency during the course of an article 10 abuse or neglect proceeding. A contract agency may ask to be heard in connection with the adjournment of a dispositional hearing (see Family Ct Act § 1048 [c]), and a contract agency must submit answering papers in connection with a motion to terminate placement (see Family Ct Act § 1063). Otherwise, there is no provision for direct participation of a contract agency in an article 10 proceeding.
A basic rule of statutory construction — expressio unius est ex-clusio alterius — provides that “where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded.” (Matter of Hoerger v Spota, 109 AD3d 564, 568 [2d Dept, Aug. 16, 2013]; see also Bruesewitz v Wyeth LLC, 562 US —, —, 131 S Ct 1068, 1076 [2011]; Matter of Jacob, 86 NY2d 651, 673 [1995]; Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce, 21 NY3d 55, 62 [2013]; People v Lewis, 29 NY2d 923 [1972]; Goodwin v Pretorius, 105 AD3d 207, 216 [4th Dept 2013]; Matter of Virginia E.E. v Alberto S.P., 108 Misc 2d 565 [Fam Ct, Queens County 1981]; McKinney’s Cons Laws of NY, Book 1, Statutes § 74.)
Applying this canon of construction here compels the conclusion that the legislature’s omission of contract agencies from *930 the specific parties and nonparties who are afforded an opportunity to be heard in article 10 abuse and neglect proceedings was intentional.
Accordingly, as EGS, a contract agency to ACS, has no standing in an article 10 proceeding to make applications to the court, its motion for an order authorizing it to place VE, Jr. in the grandparents’ home and directing ACS to expedite ICFC approval is denied.

. The ICPC prohibits the placement of a child in a foster home in a different state until the “sending state” has provided the “receiving state” with notice of intent to place the child in the receiving state and comprehensive information about the child, his parents, the proposed foster parents, and the reasons for the proposed placement, and the receiving state has investigated the proposed foster parent, the foster home, and the surrounding circumstances and has made a determination that the proposed placement is not contrary to the child’s interests (Social Services Law § 374-a, art III). The ICPC is designed to assure that out-of-state foster placements are made to appropriate resources (Matter of Melinda D., 31 AD3d 24, 31 [2d Dept 2006]).

. The address was inexplicably redacted in the EGS report.

. The grandparents have filed no petitions in this court, for visitation or otherwise.

. A “ ‘[c]hild protective agency’ means the child protective service of the appropriate local department of social services or such other agencies with whom the local department has arranged for the provision of child protective services . . . .” (Family Ct Act § 1012 [i] [emphasis added].)